ASAMBLEA MUNICIPAL DE JUNCOS, querellante y apelada, *v.* AGAPITO GONZÁLEZ, ALCALDE DE JUNCOS, querellado y apelante.

Núm. 10.—*Sometido:* Julio 13, 1939. *Resuelto:* Noviembre 7, 1939.

*Francisco González Fagundo,* abogado del apelante; *J. Valldejuli Rodríguez,* abogado de la apelada.

El Juez Asociado Señor De Jesús emitió la opinión del tribunal.

Este recurso se interpuso por Agapito González contra la resolución de la Asamblea Municipal que lo destituyó como Alcalde de Juncos a virtud de cargos que le formularon los asambleístas Antonio Sierra y Juan B. Vélez.

Los que formuló Antonio Sierra fueron jurados el 16 de diciembre de 1938 y son como sigue:

(A) Haber ordenado que una receta valorada en $4.50 para Germán Calcaño, empleado regular del municipio de Juncos con un salario de $60 mensuales, fuese despachada con cargo al fondo de beneficencia, habiéndose despachado la misma el 30 de noviembre de 1938 con el libramiento oficial número 626.

(B) Haber dejado de cumplir la recomendación que le hiciera la Asamblea Municipal de Juncos en su sesión extraordinaria de 16 de agosto del año pasado, al efecto de que el sobrante de maderas, zinc y otros materiales que quedara a la terminación de los trabajos del acueducto, se empleara en la construcción de un parque atlético y que no solamente dejó de construir dicho parque, si que por su negligencia

permitió que dicho material, que tenía un valor de $410, desapareciera, perjudicándose así al municipio de Juncos en dicha cantidad.

(C) Porque dicho Alcalde de Juncos negligentemente y en perjuicio de la administración no ha dado los pasos necesarios para la construcción del matadero municipal, plaza de mercado, ampliación del hospital municipal, construcción de calles y ampliación del alcantarillado, a pesar de haberse ordenado su construcción y existir fondos para ello desde el 8 de noviembre de 1937 a virtud de cierto empréstito concertado con el Banco de Ponce.

(D) Haber ordenado que se borraran de los libros de contabilidad del municipio los cargos que se pudieran hacer a las casas de los señores Juan Vázquez y Candelario Vázquez Morales, para que mientras estuviesen pagando la deuda de $104.50 por concepto de consumo de agua, la continuaran usando gratuitamente hasta haber pagado totalmente la referida deuda, y haber ordenado además a las autoridades municipales que administran el acueducto que no se tomara ninguna acción para la desconexión del servicio de agua sin su conocimiento y aprobación.

(E) Haber ordenado al empleado municipal Anselmo Cruz que dejase de cumplir la orden que se le dió de desconectar el servicio de agua a las casas números 21 de la calle Almodóvar y 15 de la calle Agueinaba, propiedad del señor Candelario Vázquez, y las casas del Sr. Juan Vázquez en las calles Agueinaba 17 y Escuté 8, que debían fuertes cantidades al municipio de Juncos, ordenándole que comunicara a la Tesorera Municipal de Juncos que el servicio había sido desconectado, sin ser esto cierto, haciendo aparecer falsamente que dicho empleado había cumplido la orden recibida, perjudicando de ese modo los intereses de la administración.

(F) Porque a causa de la actitud del Alcalde existen innumerables propiedades en Juncos usando gratuitamente el servicio de agua del acueducto, obstaculizando el Alcalde a

los encargados de administrar el acueducto en el cumplimiento de sus obligaciones de cobrar el agua e ingresar su importe en los fondos municipales, o en su defecto privar de este servicio a aquellas propiedades que no paguen por el mismo.

El presentado por Juan B. Vélez el 27 del mismo mes substancialmente dice:

Que desde el 18 de enero al 5 de febrero de 1937 aproximadamente, el Alcalde hizo un traspaso de sus dos establecimientos comerciales a favor de su cuñado y compadre el Sr. Justo Lozano, y en esos establecimientos se están haciendo las compras del hospital municipal y comedores escolares del pueblo y sus barrios.

Oportunamente contestó el querellado uno y otro pliego de cargos. En lo que respecta a los formulados por Antonio Sierra, sustancialmente los contestó en los siguientes términos:

1. En cuanto al cargo A, aceptó que en la fecha alegada ordenó que despacharan la receta en cuestión, valorada en $4.50, con cargo al municipio, porque Germán Calcaño sólo ganaba un salario de $12 ó $14 semanales, carecía de bienes de fortuna y dependía de él para su sostenimiento una numerosa familia; que en aquella fecha la esposa de Calcaño y dos de sus hijos se hallaban gravemente enfermos, y que al explicarle Calcaño su situación y decirle que necesitaba las medicinas que eran indispensables para devolver la salud a sus hijos y esposa, "tratándose de un insolvente y de un caso de verdadera beneficencia, en que estaba en peligro la vida de seres humanos, el querellado ordenó el despacho de la referida receta gratuitamente." Que al hacerlo, no tuvo la intención de defraudar al Municipio de Juncos y actuó dentro de sus facultades.

2. Refiriéndose al cargo B, aceptó que la Asamblea Municipal le hizo la recomendación a que dicho cargo se contrae, si bien niega que hubiesen desaparecido los materiales en cuestión, alegando en contrario que éstos consisten de ran-

chones de zinc y moldes de madera, y se hallan en un almacén que fué construído en el sitio donde se realizaron las obras (del acueducto); que valen $300 y que no pudieron ser utilizados en la forma recomendada por la Asamblea: (a) porque no existe ni existía entonces asignación para la obra, que consistía en la construcción de un parque atlético; (b) porque trasladar dichos materiales al pueblo costaba más que el valor de los mismos, considerando que se hallaban a una distancia de diez kilómetros y los caminos por donde tenían que traerse estaban en muy malas condiciones; (c) porque el Alcalde se proponía utilizar dichos materiales en la edificación de una casa para el celador del depósito del acueducto; y (d) porque el municipio no se hallaba en condiciones de emprender la obra.

3. Contestando el cargo C, negó que hubiera sido negligente en el desempeño de sus deberes oficiales, alegando en contrario que la preparación de los planos para la construcción del matadero y plaza de mercado fué ordenada oportunamente al Departamento del Interior, que los del matadero no estuvieron terminados hasta el mes de noviembre de 1938, y los de la plaza del mercado no habían sido entregados en la fecha en que contestó el pliego de cargos, el 22 de diciembre de 1938. Que en la obra del hospital municipal, ya se había celebrado para aquella fecha y adjudicado la subasta, y que en breve se daría principio a la construcción. Refiriéndose a la "Construcción de Calle", alegó que la partida de $1,111 asignada para la construcción de una calle nueva era insuficiente y que él venía haciendo gestiones con la PWA para obtener fondos, no sólo para construir la calle en proyecto, sino para hacer una reparación general a todas las de la población, proponiéndose utilizar la asignación de $1,100 en cualquier otra obra beneficiosa para el municipio. En cuanto a la ampliación del alcantarillado, alegó que la partida de $3,400 asignada para esa obra era insuficiente y que se proponía hacer una transferencia de los $1,100 para la construcción de la calle a la

partida de $3,400, y proceder entonces a la obra del alcantarillado. Finalmente, alegó el querellado que la demora en la realización de estas obras no ha causado perjuicio y por el contrario ha beneficiado al municipio de Juncos.

4. La contestación del cargo D en parte constituye una negativa que envuelve una admisión (*negative pregnant*) y dice así: "... *el querellado niega específicamente que con el fin calculado de defraudar al tesoro municipal de Juncos ordenara que se borraran de los libros de contabilidad del Municipio de Juncos los cargos que pudieran hacer a las casas de Juan Vázquez y Candelario Vázquez Morales por concepto de consumo de agua.*" Continuó negando que hubiera prestado su consentimiento para que dichos señores ni ninguna otra persona obtuvieran el agua gratis; negó haber ordenado que no se tomase acción para cortar el servicio de agua por falta de pago. Alegó como defensa especial que estando el querellado actuando como Director de Obras Públicas, ordenó a la Tesorera que cuando fuere necesario cortar el servicio de agua a una persona, se lo notificasen a él para hacerlo por conducto del Inspector Municipal de Obras Públicas, luego de que el querellado hiciese, sin resultado práctico alguno, todas las gestiones personales necesarias para conseguir el pago de lo adeudado o la mayor parte del mismo. Alegó además que en distintas ocasiones solicitó informes de la Tesorera Municipal sobre los pagos mensuales y que ésta, en violación de la ley, nunca le rindió tales informes.

5.—Contestó el cargo E con una negación general y alegó como defensa que Anselmo Cruz es su enemigo personal y que en varias ocasiones amenazó al querellado por haber dicho a la Tesorera que no lo utilizaran más en la desconexión del servicio de agua y que cuando fuere necesaria tal desconexión, lo avisaran al querellado para hacerlo por conducto del Inspector Municipal de Obras Públicas, persona a quien corresponde verificar dicha gestión.

6. En contestación al cargo F, niega "que por causa de su actitud existen en la municipalidad de Juncos innumera-

bles propietarios utilizando el servicio de agua sin pagar'', y que él haya obstaculizado la administración del acueducto, alegando en contrario que en todo momento ha prestado su más decidida cooperación tanto a la Tesorera Municipal como a los encargados de recaudar los cobros del agua, y que personalmente se ha entrevistado con muchas personas que adeudan agua, gestionando por todos los medios a su alcance el cobro de la mayor cantidad posible.

Como ''defensa especial adicional'' el querellado alegó:

''(a) Que estos cargos son el resultado de una insidia existente entre el asambleísta que los formuló, Antonio Sierra, que es enemigo personal del Alcalde, su esposa Elena Castro de Sierra, que es también asambleísta municipal, y ambos son padres de la Tesorera Municipal, Sra. Petra Sierra de Romero, y que estos cargos han sido inspirados por dicha Tesorera Municipal, ya que ella redactó cargos análogos a los presentes y los formuló ante la Asamblea Municipal de Juncos contra el querellado en ocasiones anteriores, quedando los mismos sobre la mesa y sin que la Asamblea tomara acción alguna en relación con dichos cargos.

''(b) Que los cargos de referencia obedecen además a una conjura de los asambleístas municipales Sres. Octavio Santos, Antonio Sierra, Elena Castro de Sierra, Jesús González Díaz, Dolores Ortiz de García y Román Sánchez Ocasio, quienes son enemigos personales del querellado, y alega además dicho querellado que el asambleísta municipal Jesús González Díaz, el día 19 del corriente le manifestó al ciudadano Pepín Pereira, delante de Maximino Delgado, en el establecimiento comercial de Pablo Colón, radicado en la calle Corchado, de Juncos, que la Asamblea Municipal estaba toda en contra del Alcalde y de acuerdo para destituirlo, y que estaba seguro de la destitución del mismo en virtud de este procedimiento y que el Alcalde tendría que llevar el asunto al Supremo, pues ante la Asamblea lo perdería. Igualmente el querellado alega que el referido asambleísta Jesús González, el día 16 del corriente y en la tarde de dicho día (se refiere al mes de diciembre de 1938), antes de celebrarse la sesión de la Asamblea Municipal que tuvo lugar esa noche, en el sitio conocido por 'El Caracol' del pueblo de Juncos, hizo manifestaciones públicas ante un sinnúmero de personas en el sentido de que el Alcalde de Juncos, aquí querellado, sería suspendido de empleo y sueldo en una sesión que esa misma noche celebraría la Asamblea Municipal y que finalmente sería destituído en virtud de este procedimiento.''

Contestando el "cargo adicional" formulado por el asambleísta Juan B. Vélez, expuso el querellado:

"Que en el día de hoy ha sido notificado de un llamado cargo adicional con el fin de que se 'incoe procedimiento de destitución' presentado en la noche del 27 de diciembre de 1938 en la Asamblea Municipal de Juncos, Puerto Rico, por el Asambleísta Juan B. Vélez, y ahora el querellado, sin renunciar a la cuestión jurisdiccional que ha planteado en este procedimiento ni a ninguna otra de las cuestiones privilegiadas que ha presentado, contesta en su fondo el llamado cargo adicional y alega:

"Que allá para el mes de diciembre de 1936 el querellado, que en aquel entonces era dueño de dos establecimientos comerciales radicados en el municipio de Juncos, convino con su cuñado Justo Lozano en vender los mismos. Que prepararon el inventario correspondiente y se llevó a efecto la negociación de venta con el señor Lozano y se solicitaron y obtuvieron para fines de diciembre de 1936 las patentes de rentas internas correspondientes, y desde dicha fecha hasta el presente los establecimientos comerciales de referencia han pertenecido y son de la exclusiva propiedad de Justo Lozano, sin que el querellado tenga participación o derecho alguno en los mismos ni tenga nada que ver con los referidos establecimientos.

"El querellado niega que ante el Hon. Procurador General de Puerto Rico exista proceso alguno del cual él haya sido notificado, en su contra por los motivos antes consignados, y de existir dicho procedimiento el querellado nunca ha tenido conocimiento del mismo.

"Como defensa especial el querellado alega que el Asambleísta Municipal Juan B. Vélez es su enemigo personal y está prejuiciado contra el Alcalde, y alega además que dicho cargo no es nada más que una conjura existente entre dicho asambleísta y otros miembros de la Asamblea Municipal de Juncos, con el fin de conseguir a todo costo la destitución del querellado como alcalde de Juncos. Y alega igualmente dicho querellado que la asambleísta señora Dolores Ortiz de García, el día 27 del corriente y como a la una de la tarde, en la calle Escuté de Juncos, manifestó en alta voz delante de varias personas lo siguiente: 'Esta noche tenemos reunión para formular más cargos al alcalde y acabar de botarlo con todos su secuaces.' "

El 9 de enero último se constituyó en sesión la Asamblea Municipal con asistencia de diez de los once miembros de que se compone, actuando como su asesor legal el abogado J. Valldejuli. El querellado compareció asistido de letrado.

Antes de dar principio a la substanciación de los cargos, el querellado formalmente requirió a los asambleístas Antonio Sierra y Juan B. Vélez que se abstuviesen de actuar como miembros de la Asamblea por ser ellos los autores de los pliegos de cargos. Dichos asambleístas rehusaron inhibirse. En vista de su negativa el querellado formuló una moción solicitando de la Asamblea que no permitiese intervenir en la sustanciación de los cargos a los siguientes asambleístas: Octavio Santos, Antonio Sierra, Elena Castro de Sierra, Jesús González Díaz, Dolores Ortiz de García y Román Sánchez Ocasio. Basó la moción en el hecho de que estos asambleístas eran sus enemigos personales unos, y otros habían hecho manifestaciones públicas demostrativas de estar prejuiciados contra él, alegando además que la presentación de estos cargos era el resultado de una conspiración o conjura de estos asambleístas para destituirlo. Ofreció prueba consistente en el testimonio de varios testigos en el sentido de que en ciertas ocasiones habían oído de determinados asambleístas manifestaciones en éstos o parecidos términos: "La Asamblea se reunirá esta noche para suspender al Alcalde. Después volverá a reunirse para destituirlo y tendrá que apelar ante el Tribunal Supremo porque la Asamblea lo destituirá." A otro asambleísta se le imputó haber dicho: "Ese Alcalde es un carifresco, porque ha seguido visitando la Alcaldía después de haber sido suspendido de empleo y sueldo."

La Asamblea oyó la evidencia que para probar las alegaciones de su moción presentó el querellado. La moción fué desestimada.

Se procedió entonces a la prueba en relación con los cargos, celebrándose sesión a ese efecto los días 9 y 25 de enero y 9 y 24 de febrero de este año, recayendo resolución el 15 de mayo último en la que por mayoría de votos se declararon probados todos y cada uno de los cargos, decretándose en su consecuencia la destitución del querellado como Alcalde

de Juncos, con efecto retroactivo a la fecha en que fué suspendido de empleo y sueldo, el 16 de diciembre de 1938.

Apeló el querellado para ante este tribunal, basando el recurso en cuatro "Fundamentos de Hecho" y seis "Fundamentos de Derecho", que expone así:

"FUNDAMENTOS DE HECHO

"1. El peticionario ha sido privado del derecho al ejercicio del cargo de Alcalde de Juncos sin el debido procedimiento de ley (*due process of law*) y sin tener su día en corte (*day in court*) por cuanto la previa audiencia y oportunidad de defenderse resultó una farsa autorizada por la Asamblea Municipal de Juncos sólo a los efectos de aparecer cumpliendo con la letra de la ley, ya que la Asamblea Municipal estaba prejuiciada contra el peticionario y actuó movida por pasión, prejuicio y parcialidad manifiesta, estando sus miembros que fueron impugnados por el Alcalde, confabulados para hacer todo lo posible por destituir al mismo; y apareciendo además tan manifiestamente demostrado dicho prejuicio, que de alrededor de setenta y cinco cuestiones planteadas por dicho querellado en las distintas vistas ante la Asamblea éste no obtuvo una sola resolución a su favor.

"2. La Asamblea declaró probados los cargos formulados al alcalde querellado, a pesar de no estar los mismos sostenidos por evidencia competente y admisible, resolviendo el caso contra la prueba presentada por el querellado, cuya prueba exoneraba a éste totalmente de dichos cargos.

"3. En ningún momento se demostró durante las distintas vistas de este caso la existencia de justa causa, de naturaleza sustancial que afectara los derechos e intereses de El Pueblo y que implicara una destitución contra el alcalde querellado, apareciendo por el contrario de la prueba practicada por el peticionario *sic* que sus actuaciones en todo momento fueron correctas, que no hubo abandono, negligencia excusable ni conducta inmoral e incorrecta en el desempeño de sus funciones como alcalde de Juncos.

"4. La Asamblea Municipal debió dar crédito a la prueba de prejuicio que se practicó al solicitar la inhibición de los asambleístas que formularon los cargos y de otros más ya que éstos no estaban en condiciones de actuar con una mente libre de prejuicios al juzgar al alcalde por cargos que ellos mismos formularon, violando así el más rudimentario espíritu de justicia.

## "Fundamentos de Derecho

"1. El procedimiento seguido en este caso es desde su principio nulo y contrario a derecho por cuanto el distinguido abogado que fué designado asesor legal de la Asamblea Municipal de Juncos no actuó como un asesor legal propiamente dicho sino como un fiscal, conduciendo dicho asesor dicho procedimiento en todos sus detalles sin que tomara parte la Asamblea Municipal nada más que para resolver las cuestiones planteadas, siendo la actuación de dicho asesor contraria al espíritu y propósito que comprende el cargo de asesor legal. (Véase *In re Ortiz* v. *Venegas*, 43 D.P.R. pág. 390.)

"2. Porque la Asamblea Municipal admitió evidencia incompetente, irrelevante, inmaterial e impertinente, que fué objetada oportunamente por el alcalde, para sostener los cargos en abierta violación de nuestra ley de evidencia vigente, siendo por tanto contrarias a derecho todas las resoluciones dictadas por la Asamblea admitiendo dicha evidencia, cuyas resoluciones fueron oportunamente excepcionadas por el alcalde querellado.

"3. Porque los hechos imputados al querellado en el pliego formulando los primeros cargos no constituyen una buena o legítima causa de acción para un procedimiento de *impeachment,* siendo un error de la Asamblea el no decretarlo así, debiendo haber sido declaradas con lugar las excepciones previas formuladas contra dichos cargos.

"4. Porque el llamado 'cargo adicional' no es un cargo ni contiene hechos que constituyan causa de acción ni contiene tampoco imputaciones de hecho de clase alguna contra el querellado que justifiquen o den base para un procedimiento de *impeachment,* siendo un error de la Asamblea Municipal de Juncos el no decretarlo así, debiendo haber sido declaradas con lugar las excepciones previas formuladas contra dicho cargo.

"5. La resolución final de la Asamblea Municipal destituyendo al alcalde en este caso es nula y carece de validez y efecto legal y ha sido aprobada sin jurisdicción por los siguientes fundamentos:

"(a) Porque dicha resolución no ha sido aprobada por la mayoría de los miembros—léase—once miembros de que se compone la Asamblea Municipal de Juncos a tenor de lo dispuesto en el artículo 29 de la Ley Municipal vigente.

"(b) Porque dicha resolución no hace declaración alguna de culpabilidad o inocencia contra el querellado y se limita exclusivamente a condenar e imponer sentencia y castigo.

"6. Porque la Asamblea Municipal de Juncos actuó sin jurisdicción por cuanto la convocatoria hecha para la última sesión para

resolver el caso aparece convocada por el vicepresidente de la Asamblea, quien carece de facultades para tales convocatorias de acuerdo con la ley. (Véase *Ex rel Mendín* v. *Seijo*, 43 D.P.R. pág. 368.) Igualmente actuó dicha Asamblea sin jurisdicción que anula el procedimiento por cuanto unos testigos prestaron juramento ante el Secretario de la Asamblea que carece de facultades para tomar dicho juramento y otros aparece que no prestaron juramento ante nadie. (*Branizar* v. *Mendín, Alcalde*) 43 D.P.R. pág. 29.''

No vamos a discutir separadamente las diez cuestiones suscitadas por el apelante, porque incurriríamos en repeticiones y extenderíamos innecesariamente esta opinión. Haremos una discusión general del caso, en la cual consideraremos los distintos puntos levantados.

Siguiendo el orden lógico de las cuestiones planteadas empezaremos por el requerimiento que hizo el querellado a los asambleístas Antonio Sierra y Juan B. Vélez para que se abstuviesen de intervenir como jueces en el asunto, por ser autores de los cargos que se iban a sustanciar.

Era ésta una cuestión que debía dirigirse a la conciencia de los señores asambleístas y eran ellos los únicos jueces de su capacidad para intervenir. Si en efecto, después de oír la voz de sus conciencias, creían ellos que no podían juzgar imparcialmente al querellado, era su deber abstenerse de intervenir. Si no obstante haber formulado los cargos estimaban que podían resolverlos tomando en consideración tanto la prueba de cargo como la de descargo, es decir, por el resultado de toda la evidencia, en ese caso venían ellos obligados a cumplir con los deberes de sus cargos, entre los cuales se halla el de juzgar al Alcalde cuando se presentan cargos contra él. Es ésta una cuestión subjetiva y no podemos nosotros determinar si actuaron correcta o incorrectamente al no inhibirse por el solo hecho de haber ellos formulado los cargos. A este efecto es de aplicación, *mutatis mutandi*, lo dicho en el caso *In re Ortiz* v. *Venegas, Alcalde*, 43 D.P.R. 390, 401:

"No queremos decir que por el solo hecho de que sea el alcalde el que formule los cargos contra el funcionario, deba inhibirse. En manera alguna. El alcalde es el jefe ejecutivo de la administración municipal y en el cumplimiento de sus deberes puede venir en conocimiento ,directo de actos realizados por los funcionarios por él nombrados que exijan su destitución, y en tales casos ¿quién mejor que el alcalde para resolver el asunto, después de haber escuchado la defensa del funcionario o de haberle dado la oportunidad de defenderse? El alcalde no actúa por su interés personal, sino en bien de una buena administración municipal.

"Pero cuando se imputan al alcalde hechos de la naturaleza de los alegados en la moción de inhibición, la situación varía, y debe darse una oportunidad al funcionario de presentar su prueba. Si fueren ciertos, procedería la inhibición."

■■ Tampoco cometió error la Asamblea al desestimar la moción del querellado para que no se permitiese intervenir a los seis asambleístas antes nombrados. Ello es así, porque la Asamblea carece de facultades para impedir que un miembro de la misma conozca de cargos formulados que han de sustanciarse ante ella. El deber de la Asamblea es juzgar al querellado pero no a sus miembros. Por consiguiente, era ésta, como dijimos anteriormente, una cuestión para ser resuelta única y exclusivamente por los propios asambleístas impugnados. Claro es que si la que el querellado llama "prueba de prejuicios" demuestra efectivamente que los asambleístas impugnados, debiendo inhibirse, no lo hicieron, puede este tribunal revocar la resolución de la Asamblea si estima que el querellado ha sido en realidad perjudicado por el prejuicio o parcialidad que dichos asambleístas pudieran haber tenido contra él.

Hemos examinado la "prueba de prejuicios" y en verdad no satisface la conciencia de un juzgador imparcial. La prueba de manifestaciones que otras personas hayan hecho debe ser robusta y rodeada de circunstancias que garanticen su autenticidad, pues es muy fácil imputarle a otro cualquier manifestación y decir que nadie más la oyó, o que no conocía las otras personas en cuya presencia se hizo. Eso pre-

cisamente sucede en el presente caso. Las manifestaciones que declaró Justo Lozano que le hizo el asambleísta Sierra sólo fueron oídas por él, y si se tiene en cuenta que Lozano es cuñado del querellado y que a su nombre se hallan las dos tiendas que en los cargos se alega pertenecen al Alcalde, necesario es recibir su declaración con la debida cautela. Los demás testigos tampoco han sido corroborados. Declararon que las manifestaciones se hicieron públicamente en presencia de varias personas, pero a pesar de que los testigos han vivido siempre en Juncos y conocen a los habitantes de la población, generalmente no pueden recordar algunas de dichas personas, aunque recuerdan con exactitud el día, hora y sitio en que se hicieron.

Es cierto que la Asamblea estuvo dividida en todas sus deliberaciones. La mayoría, presidida por Octavio Santos, sistemáticamente sostenía al asesor legal en todas las cuestiones que se suscitaban en relación con la práctica de la prueba. Otro grupo, sistemáticamente también, votaba a favor del Alcalde, y había otros que generalmente se abstenían de votar. Pero es lo cierto que el querellado tuvo oportunidad de presentar y presentó toda la prueba pertinente a su defensa, y analizando fría e imparcialmente toda la evidencia que tuvo ante sí la Asamblea, es preciso concluir que algunos de los cargos fueron satisfactoriamente probados y que en manera alguna pudo afectar el resultado cualquier espíritu de hostilidad que pudiera haber existido en la mayoría de la Asamblea hacia el Alcalde querellado.

Pasemos al primer cargo. Se imputa al querellado haber ordenado que una receta por valor de $4.50 para Germán Calcaño fuese despachada con cargo a la partida de enfermos pobres, a pesar de que Calcaño era chófer de la ambulancia municipal y percibía un sueldo ascendente a $60 mensuales. No niega el Alcalde los hechos que se le imputan en este primer cargo, pero alega que Calcaño, a pesar de ganar un sueldo de $60 mensuales, tiene una numerosa familia que depende exclusivamente de su sueldo para su

sostenimiento, que fué informado el querellado que la receta era para un hijo de Calcaño y que si ese desembolso era ilegal, el Auditor Municipal debió rechazar su pago y sin embargo no lo hizo. Arguye el Alcalde que una persona que gana $60 mensuales tiene derecho a ser considerada como pobre y recibir medicinas gratis del municipio. De acuerdo con la prueba practicada la partida para enfermos pobres del municipio de Juncos en aquel año era de $150, circunstancia ésta que indudablemente no desconocía el Alcalde. Siendo ello así, no podemos comprender cómo podía él ignorar que esos $150 debían dedicarse a las necesidades de los enfermos indigentes y no emplearse en recetas para empleados municipales con sueldos de $60 mensuales. Asumiendo que la receta hubiera sido para un hijo o para la esposa de Calcaño, la situación sería la misma que si el enfermo hubiera sido el propio Calcaño, pues en uno y otro caso siendo él el jefe de la familia, estaba obligado a pagarla, y si el Alcalde quería ser generoso o caritativo con esa familia, bien pudo hacerlo con su peculio particular pero no con fondos públicos confiádosle para pobres de solemnidad. Aquéllos a quienes por razón de sus cargos se confían fondos y propiedades públicos están obligados a administrarlos escrupulosamente, dedicándolos estrictamente a los fines autorizados por las leyes y reglamentos vigentes. Sólo así se hacen acreedores a la confianza en ellos depositada.

A nuestro juicio este cargo ha sido suficientemente probado y demuestra una completa despreocupación hacia sus deberes como Alcalde, sin que constituya defensa alguna el hecho de que no tuviese la intención de defraudar al municipio. Tampoco justifica su conducta el que el Auditor hubiese sancionado su acto ilegal al no rehusar el pago de la receta, pues a lo sumo esto significaría que tanto el Auditor como el Alcalde estaban *in pari delicto.*

Otro cargo de cuya verdad no tenemos duda alguna es el formulado por Juan B. Vélez imputando al Alcalde ser

dueño de dos establecimientos de provisiones que tiene a nombre de su cuñado Justo Lozano, de donde el hospital y el comedor escolar se surten exclusivamente. El propio querellado declaró que antes de ser electo alcalde era dueño de dichos establecimientos y que el 15 de diciembre de 1936, por tener que hacerse cargo de la administración municipal y no poder ser comerciante ni atender las tiendas, las traspasó a Justo Lozano, casado con una hermana suya. (T. de E. 172 y siguientes.) Indudablemente no ignoraba el querellado que el cargo de alcalde no le impedía ser dueño de uno o más establecimientos comerciales siempre que no celebrase contratos con el municipio, y probablemente para evadir este impedimento legal fué que se hizo el traspaso a Justo Lozano, como más adelante vamos a demostrar.

De la prueba resulta concluyentemente que todo lo que se consumía en el hospital municipal y en el comedor escolar, incluyendo el carbón, se compraba exclusivamente en la tienda de Lozano. Resulta también que estas compras se hacían obedeciendo órdenes del Alcalde, quien al llamársele la atención sobre esta irregularidad, manifestó que se veía obligado a hacerlo así porque había tenido muchos gastos en la campaña electoral pero que después que recuperara un poco lo perdido repartiría las compras entre los demás establecimientos de la localidad. (T. de E., 217.)

Basta leer toda la prueba relativa a este cargo para quedar plenamente convencido de que Justo Lozano, que durante el año y medio anterior a este traspaso no había tenido negocio alguno, era en realidad el escudo tras el cual se ocultaba el querellado. De ahí que el Alcalde dijera que tuvo que traspasar las tiendas porque siendo alcalde no podía ser comerciante.

En el caso de *Díaz* v. *Charneco*, 48 D.P.R. 536, 539, uno de los seis cargos que se formularon al alcalde fué el de haber comprado provisiones para el hospital municipal para ser pagadas con fondos del municipio, en cierto estableci-

miento mercantil en el que estaba directamente interesado, simulando que el contrato se realizaba con otra persona. Refiriéndose a este cargo dijo este tribunal:

"Para probar el cargo se aportó evidencia documental y testifical. La hemos estudiado cuidadosamente y a nuestro juicio demuestra la verdad de la imputación. No obstante los grandes esfuerzos que el abogado del apelante hace en su alegato para impugnar el valor probatorio de la evidencia y en todo caso su suficiencia, la impresión que produce su lectura independiente en la conciencia del juzgador, perdura. Convence de que el establecimiento de que se trata era del Alcalde, o por lo menos que el Alcalde estaba directamente interesado en el mismo."

En el caso anteriormente mencionado, se cita con aprobación el siguiente párrafo del de *El Pueblo ex rel. Pérez* v. *Manescau*, 33 D.P.R. 739, 741:

"Que la celebración de un contrato por un funcionario público expresamente prohibido por la ley y claramente contrario a la política pública, constituye una violación de un deber oficial capaz de producir la pérdida del cargo, nos parece evidente. No se trata de una violación inconsciente o de escasa importancia o trascendencia. Desde el momento que se acudió a una simulación para eludir el mandato de la ley, quedó de manifiesto la intención deliberada de infringirla."

En el caso de Manescau, el cargo imputado consistía en haber arrendado una casa de su propiedad al municipio, de cuya asamblea era miembro, traspasando la casa simuladamente a otra persona.

Pero asumiendo, sin aceptarlo, que no se hubiese probado suficientemente que el querellado fuese el dueño de los establecimientos en cuestión, el hecho de poseerlos su cuñado y tener el querellado conocimiento del monopolio que se había creado a su favor con el consiguiente perjuicio de los fondos municipales bajo su administración, comprando todo lo necesario para el hospital municipal y el comedor escolar en dichos establecimientos, constituiría una inmoralidad por parte del querellado que justificaría plenamente su destitución.

■ Impugna el querellado la suficiencia de los cargos, alegando que no aducen motivo de destitución y que cometió error la Asamblea al desestimar las excepciones previas que formuló contra ellos. Una ligera lectura de los cargos demuestra que de ser cierto cualquiera de ellos, el alcalde no debe continuar en su puesto. No debemos perder de vista que aunque la Asamblea al conocer de cargos contra el Alcalde ejerce funciones cuasi judiciales, sin embargo no deja de ser también una junta administrativa, y en el procedimiento ante tales juntas y comisiones no existe la rigidez característica de los procedimientos judiciales. Ante dichas juntas las reglas de procedimiento son más flexibles, existe una gran liberalidad tanto en la interpretación de las alegaciones como en la práctica de la prueba, y siempre que no se produzca una injusticia, se admite a veces evidencia que cualquier tribunal de justicia rechazaría. Es precisamente por esa liberalidad en el procedimiento que va siendo cada vez mayor la jurisdicción de que se priva a los tribunales de justicia para conferirla a las juntas o comisiones administrativas. Véase la obra de James M. Landis, actual decano de la Escuela de Derecho de la Universidad de Harvard, titulada *"The Administrative Process"*, pág. 20 *et seq.* Véase también el caso de *In re Ortiz* v. *Venegas, Alcalde,* supra.

■ Se alega por el querellado que la resolución por la cual fué destituído, o sea la aprobada en la sesión celebrada el 15 de mayo de 1939, es nula, (*a*) porque no hace declaración de culpabilidad o inocencia contra el querellado, limitándose a destituirlo; (*b*) porque actuó sin jurisdicción por haber sido convocada la Asamblea por el vicepresidente, quien carece de facultades para tales convocatorias; (*c*) porque la resolución final no fué aprobada por la mayoría de los once miembros de que legalmente se componen, y (*d*) porque los testigos que depusieron ante ella prestaron juramento ante el secretario de la Asamblea, que carece de facultades para ello.

En la copia certificada de la resolución de la Asamblea que fué elevada ante este tribunal como parte de la prueba, se consigna en relación con cada cargo que el conjunto de toda la prueba demostró la verdad de los hechos imputados en cada uno de ellos, repitiendo los hechos constitutivos de cada cargo, y termina la resolución destituyendo al querellado por entender, como hemos dicho, que cada uno de los cargos quedó probado. Es obvio que la resolución de la Asamblea declarando probados los cargos equivale a una declaración de culpabilidad.

Al suspenderse de empleo y sueldo al Alcalde le sustituyó en el cargo el presidente de la Asamblea. Actuando el presidente como alcalde, lo sustituyó en la presidencia de la Asamblea para todos los efectos legales el vicepresidente de la misma. Por consiguiente, actuó éste con jurisdicción al convocar la Asamblea, pues en ese momento no actuaba como vicepresidente, sino como presidente interino o accidental de dicho organismo.

Aparece de la citada resolución que fué aprobada con el voto afirmativo de Antonio Sierra, Dolores Ortiz de García, Jesús González Díaz, Elena Castro de Sierra, Juan Bautista Vélez y Octavio Santos, o sea seis de los once miembros de que se compone. Tres votaron en contra y uno se abstuvo de votar. Como seis constituye mayoría en un organismo compuesto de once miembros, forzoso es concluir que la resolución cuestionada fué aprobada por una mayoría de la Asamblea.

Conforme la estipulación de las partes fechada el 21 de junio último y aprobada por esta corte dos días después, el querellante convino en renunciar al señalamiento de error relativo a la toma de juramentos por el Secretario de la Asamblea. Aunque esa estipulación no hubiera existido, el señalamiento de error no hubiera podido sostenerse, pues no aparece del récord que el querellado en momento alguno formulase oposición a que los testigos fuesen juramentados por el secretario, y siendo ello así, su aquiescencia implícita al

no objetar entonces le impide ahora levantar esa cuestión ante este tribunal. *Concensus tollit errorem.* Véanse por analogía los casos de *El Pueblo* v. *García,* 18 D.P.R. 570; *Pueblo* v. *Carrasquillo,* 22 D.P.R. 137; *Pueblo* v. *Diodonet,* 22 D.P.R. 751; *Pueblo* v. *Marrero,* 25 D.P.R. 584; *Pueblo* v. *Rivera,* 25 D.P.R. 831; *Pueblo* v. *Soto,* 28 D.P.R. 919; *Pueblo* v. *Negrón,* 34 D.P.R. 127.

El caso de *Branizar* v. *Mendín, Alcalde,* 43 D.P.R. 29, citado por el querellado, no es de aplicación al que nos ocupa. En dicho caso se anuló el procedimiento llevado a efecto ante el Alcalde por haber sido juramentados los testigos, a pesar de la oposición del apelante, por el secretario municipal, que carecía de facultades para tomar juramentos. En el *syllabus* se cometió el error de no consignar que la parte apelante se había opuesto a que el secretario tomase los juramentos, pero en el curso de la opinión (pág. 30) se dice lo siguiente:

"Aquí se notificaron por el Alcalde los cargos al funcionario demandante, pero al celebrarse la audiencia no se examinó a los testigos bajo juramento. Decimos que no se examinó, porque si bien el alcalde ordenó que los testigos prestaran juramento, lo hicieron ante el secretario municipal que carecía de autoridad para ello *y con la protesta del peticionario por su abogado.*"

Nada hay en la Ley Municipal que impida que la Asamblea delegue en un abogado que actúa como su asesor para que examine los testigos y encauce el procedimiento. Por el contrario, esto es necesario en aquellos casos en que la Asamblea no cuenta en su seno con una persona versada en Derecho. De no recurrir al asesor, el procedimiento ante la Asamblea en la mayoría de los casos resultaría en un fracaso de la justicia. Esto no quiere decir que el asesor se constituya en parte adversa al funcionario que se juzga. Su misión no es conseguir la destitución del querellado por todos los medios posibles, sino presentar ante la Asamblea la prueba verdadera y legal, para que ésta, considerándola toda, determine si se han probado o no los cargos presentados.

Estimando como estimamos que los dos cargos a que hemos hecho referencia han sido suficientemente probados, sin que en manera alguna los errores cometidos por la Asamblea hayan podido afectar el resultado, y siendo estos dos cargos suficientes para sostener la resolución por la cual se destituyó al querellado, podemos prescindir de la considera-. ración de los cargos restantes.

*Por lo expuesto, se confirma la resolución de la Asamblea Municipal de Juncos de fecha 15 de mayo de 1939 por la que el querellado fué separado de su cargo de Alcalde de Juncos.*

El Juez Asociado Sr. Travieso no intervino.

### EN MOCION DE RECONSIDERACION
Noviembre 28, 1939.

El querellado solicita la reconsideración de nuestra sentencia de 7 del actual, insistiendo en que la resolución de la Asamblea Municipal de Juncos por la que fué destituído el Alcalde querellado, confirmada por este tribunal por la referida sentencia, no fué acordada por el voto afirmativo de la mayoría de los once miembros que constituyen la Asamblea Municipal de Juncos.

El 13 de julio último, día señalado para la vista de este caso, el abogado del querellado ofreció en evidencia una copia del acta de la sesión especial celebrada por la Asamblea Municipal de Juncos el 15 de mayo de 1939, en la que se adoptó la resolución por la cual fué destituído el Alcalde, habiéndose expedido dicha certificación a petición del querellado el 17 de mayo de 1939.

Se presentó dicha certificación con el objeto de demostrar, contrario a lo que resulta de los autos, que el presidente interino, Octavio Santos, se abstuvo de votar dicha resolución y que por lo tanto ésta fué aprobada por el voto afirmativo de cinco miembros y no de seis, como resulta del récord elevado por la Asamblea Municipal. Se admitió la certificación ofrecida por el querellado, concediéndose a

la vez a la querellante hasta el 17 de julio último para presentar cualquier documento tendente a controvertir la aludida certificación. Así lo hizo la querellante, radicando otra certificación expedida por el mismo secretario de la Asamblea Municipal, de la cual resulta que el acta de la sesión especial de 15 de mayo de 1939 fué aprobada por la Asamblea Municipal en su sesión extraordinaria celebrada el 19 de mayo de 1939, lo que demuestra que al tiempo de expedirse la certificación a favor del querellado, presentada por éste en evidencia, no se había aprobado todavía por la Asamblea el acta de la sesión de 15 de mayo tantas veces mencionada.

Según la certificación presentada por el querellado, que como hemos visto fué expedida prematuramente, resulta lo siguiente: Que el presidente interino Sr. Octavio Santos abrió la sesión y que votaron por la afirmativa, para destituir al Alcalde, los Sres. Antonio Sierra, Dolores Ortiz de García, Jesús González Díaz, Elena Castro de Sierra y Juan B. Vélez, y por la negativa Santos Meléndez, Hermógenes Rivera y Manuel Lamb. Nada se dice con respecto al presidente interino de la Asamblea, Sr. Octavio Santos. En el párrafo inmediatamente siguiente a aquél en que se especifica la forma en que votaron los distintos asambleístas, se dice lo siguiente:

"El presidente informa que toda vez que la mayoría de la Asamblea ha votado en favor de la aprobación de la resolución presentada por la asambleísta municipal Dolores Ortiz de García, ha quedado ésta aprobada."

En ninguna parte del acta se dice afirmativamente que el Sr. Santos se hubiera abstenido de votar. Por el contrario, él mismo aparece manifestando que la mayoría de la Asamblea había votado a favor de la aprobación de la resolución presentada para destituir al Alcalde. Cabe presumir que el Sr. Santos supiese que la mayoría de once, que es el número de miembros de que se compone la Asamblea Muni-

cipal, no es cinco, que es el número de asambleístas que hubiera votado por la afirmativa si él se hubiese abstenido de hacerlo. Resulta además, como indicamos anteriormente, que la certificación presentada por el querellado fué expedida antes de que el acta de la sesión del 15 de mayo hubiera sido aprobada por la Asamblea en su sesión extraordinaria del 19 de mayo de 1939, y llama la atención el hecho de que al calce de la certificación, al certificar el secretario Antonio Molina la exactitud de dicha acta, se refiere a ella como la de la sesión del 5 de mayo y no como la del 15 de mayo, como en realidad lo fué, lo cual demuestra la premura con que fué expedida la copia presentada por el querellado.

Contra la certificación antes reseñada tenemos las constancias de los autos donde aparece que el Sr. Santos votó afirmativamente, y además la certificación últimamente presentada por la querellante, de la cual aparece lo siguiente:

"Dicho proyecto de resolución fué debidamente secundado por el asambleísta municipal Sr. Jesús González Díaz, y en su virtud el presidente de la asamblea pone a votación dicha resolución con el resultado siguiente:

"Por la afirmativa: Sres. Antonio Sierra, Dolores Ortiz de García, Jesús González Díaz, Elena Castro de Sierra, Juan B. Vélez *y el presidente interino de la Asamblea Municipal Sr. Octavio Santos.*

"Por la negativa: Santos Meléndez, Hermógenes Rivera y Manuel Lamb."

Siendo así, armoniza perfectamente con el párrafo siguiente, que aparece tanto en la certificación que presentó el querellado como en la presentada por la querellante, y que dice así:

"El presidente informa que *toda vez que la mayoría de la Asamblea ha votado en favor de la aprobación de la resolución* presentada por la asambleísta municipal Dolores Ortiz de García, ha quedado ésta aprobada."

Lo expuesto nos lleva a la conclusión de que el omitirse el nombre del presidente interino Sr. Octavio Santos entre

los miembros que votaron por la afirmativa fué una mera omisión del secretario de la Asamblea, que fué corregida en la certificación posterior. El hecho de que el 17 de mayo de 1939, fecha en que se expidió la certificación que presentó el querellado, en el acta original no apareciese el nombre de Octavio Santos entre los votantes, no impide que posteriormente se enmendase el acta ajustándola a la verdad, pues el 17 de mayo aún no había sido aprobada por la Asamblea el acta del 15 de mayo y por lo tanto era susceptible de cualquier enmienda.

Las demás cuestiones suscitadas en la moción de reconsideración han sido suficientemente discutidas en nuestra opinión de 7 del actual y por consiguiente nada tenemos que agregar.

*Procede, por lo expuesto, denegar la reconsideración solicitada.*