EMILIO OCASIO SOLÍS y ASAMBLEA MUNICIPAL DE CAROLINA, querellantes y apelados, *v.* FEDERICO CORDERO, ALCALDE MUNICIPAL DE CAROLINA, querellado y apelante.

Núm. 18.—*Sometido:* Diciembre 1, 1947. *Resuelto:* Diciembre 12, 1947.

*Rafael Rivera Zayas* y *Rubén Gaztambide Arrillaga,* abogados del apelante; *Rafael Rodríguez Ema* y *R. García Mújica,* abogados, respectivamente, de los apelados.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

La Asamblea Municipal de Carolina, que se compone de once miembros, residenció a Federico Cordero, alcalde de dicho Municipio, a virtud de seis cargos que le fueron formulados por Emilio Ocasio Solís, Tesorero Municipal, y, después de celebrada la vista correspondiente y declarar, por votación de seis a cinco, probados tres de dichos cargos, con igual votación, lo destituyó. Apeló el alcalde para ante este Tribunal y en el escrito conteniendo los fundamentos de hechos y de derecho radicado, hace diez señalamientos de error.

De prosperar el segundo o el tercero sería, a nuestro juicio, innecesario entrar a considerar los demás, ya que habiendo sido la votación de seis Asambleístas a favor de destituir al alcalde y de cinco en contra, la descalificación de uno o dos de ellos sería suficiente para anular la resolución recaída. Veamos, pues, dichos señalamientos, que dicen así:

"SEGUNDO ERROR: La Asamblea Municipal de Carolina cometió error al adoptar la resolución destituyendo de su cargo al querellado con el voto del asambleísta Guillermo Rodríguez, no obstante haber estado impugnando este asambleísta y haber él manifestado expresamente su propósito de condenar al querellado antes de empezar a practicarse la prueba en apoyo de los cargos.

"En la votación final de la moción para destituir al querellado, el resultado de la misma fué de seis asambleístas a favor y cinco en contra de la destitución, habiendo el asambleísta emitido su voto

a favor de que se destituyera al alcalde querellado después de haberse negado a inhibirse a petición del querellado apelante, privando a éste de un juicio justo e imparcial.

"Tercer error: La Asamblea Municipal de Carolina, cometió error al adoptar la resolución destituyendo de su cargo al querellado con el voto de la asambleísta Manuela Betancourt de Conde, no obstante haber presentado prueba el querellado del prejuicio de dicha asambleísta, negándose al querellado al intervenir la mencionada asambleísta un juicio justo e imparcial."

■■ Al comenzar la vista de los cargos, el Lic. Rubén Gaztambide Arrillaga, abogado del querellado, solicitó permiso de la Asamblea para hacer unas preguntas a los asambleístas "a los fines de examinarlos sobre su actitud mental y su situación en el presente caso a ver si hay absoluta imparcialidad." Concedido el permiso, al interrogar al asambleísta Guillermo Rodríguez, ocurrió lo siguiente, según aparece de las páginas 12 a 15 de la transcripción de evidencia:

"P. ¿Ud. conoce algunos de los hechos de los cargos que se van a ventilar en esta noche?

"R. Yo tengo unos cargos en mi poder.

"P. *¿Tiene opinión formada sobre estos cargos?*

"R. *Sí, señor.*"

"P. ¿Si tiene opinión formada sobre la culpabilidad, cuál es la opinión?

"R. La opinión que tengo es señor que tengo unos cargos jurados ante mi poder y leídos a un público. Cargos que tienen referencia con los intereses municipales y que soy un hombre que desde el momento que acepté mi posición fué conociendo los derechos que me correspondían para con los tesoros de 'El Pueblo de Puerto Rico' y Ud. sabrá que la única arma que tienen los intereses de Puerto Rico es una Asamblea y por lo tanto yo voto contra el alcalde.

"P. *¿Va a votar contra él?*

"R. *Sí, señor, por esas cuestiones.*

\*       \*       \*       \*       \*       \*       \*

"R. El licenciado no me dejó terminar.

"Sr. Presidente: ¿El Sr. Rodríguez ya terminó su contestación?

"R. Sí, señor.

"Sr. Presidente: Los asambleístas pueden y deben contestar las preguntas del Lcdo. Arrillaga. Puede continuar el Lcdo. Arrillaga.

"P. ¿Decía Ud. que no lo había dejado terminar?

"Lcdo. Rivera Zayas: Él contestó que había terminado.

"P. ¿Decía que tenía ya la mente hecha en relación con los cargos? ¿Que tenía idea formada sobre los cargos?

"R. Decía yo que soy hombre responsable en cuanto a la posición que ocupo—mi posición como asambleísta.

"P. ¿Dentro de esa honorabilidad, dentro de esa altura de mira suyas *yo quiero saber específicamente, con absoluta claridad si Ud. tiene o no la idea de que ese señor es culpable?*

"R. *Es que eso está escrito ya.*

"P. Yo quiero saber si ha decidido que Cordero es culpable. Yo le pregunto si es cierto o no que Ud. tiene la idea de que el Alcalde Cordero es culpable.

"R. *Yo lo creo culpable.*

"P. ¿De buena fe?

"R. Sí, señor.

"P. ¿Por qué razón?

"R. Por los cargos." (Bastardillas nuestras.)

De la página 15 a la 58 de la transcripción, aparece el interrogatorio a que fueran sometidos los demás asambleístas y en la 59 vuelve el Lic. Gaztambide a interrogar al Sr. Guillermo Rodríguez en esta forma:

"P. Sr. Guillermo Rodríguez, ¿después de su contestación al interrogatorio del abogado del Sr. Cordero está dispuesto a inhibirse o quiere entender en el caso?

"R. No quiero inhibirme. ¿Qué significa esa palabra?

"P. Inhibirse significa abstenerse de actuar. No actuar.

"R. Yo debo actuar.

"P. ¿Quiere ver los cargos?

"R. Sí, señor.

"P. ¿Tiene interés en verlos?

"R. Sí, señor.

"P. ¿Tiene gran interés?

"R. Sí, señor.

"P. Nada más."

No fué hasta este momento que el Lic. Coll Moya, uno de los abogados del querellante, interrogó al asambleísta Rodríguez en esta forma:

"P. ¿El Sr. Rodríguez podría decirme si una vez vistos los cargos, o sea, una vez que pasaran los testigos por esa silla y dijeran lo que tengan que decir con referencia a esos cargos y una vez que se terminara la investigación, podría llegar a una decisión imparcial de si el alcalde es o no responsable?

"R. Sí, señor.

"P. ¿Ud., si no se prueba que sean ciertos los cargos, si no hay prueba suficiente demostrativa de la culpabilidad del alcalde lo pondría absuelto?

"R. Seguro, absuelto.

"P. ¿Si se prueba que son ciertos condenaría?

"R. Sí, señor, es mi deber.

\* \* \* \* \* \* \*

"P. ¿Está en condiciones mentales de rendir un veredicto de acuerdo únicamente con la prueba que desfile?

"R. Sí, señor.

"P. ¿Si esa prueba fuera una prueba débil que no probara los cargos absolvería al Alcalde?

"R. Sí, señor.

"P. ¿Si fuera fuerte condenaría?

"R. Sí, señor.

"P. ¿Su decisión dependería de la prueba?

"R. De la prueba nada más."

Preguntado de nuevo por el Lic. Gaztambide dijo:

"P. ¿Sr. Rodríguez, por qué Ud. primero, a preguntas del abogado, dijo que tenía su criterio decidido de que iba a condenar a Federico Cordero y ahora cambia la opinión?

"R. Eso fué basándome a esto. (Muestra los cargos).

"P. ¿Ud. me dijo a mí que lo iba a condenar como quiera? ¿Es cierto que ha cambiado porque aquí compañeros asambleístas le dijeron que cambiara?

"R. *Yo* no he hablado con ninguno.

\* \* \* \* \* \* \*

"P. ¿Sr. Rodríguez, es cierto o no es cierto que además de la calor y de esto y lo otro, el Sr. Landráu le dijo que de acuerdo con la prueba?

"R. Así era mi veredicto. Yo le dije, no me dejó terminar y yo le iba a decir de acuerdo con la prueba.

"P. ¿El señor le dijo antes de que Ud. lo dijera que era de acuerdo con la prueba?

"R. Si él lo dijo no hice caso.

"P. ¿El lo dijo primero que Ud.?

"R. ¿Cuándo fué eso?

"P. Cuando yo le hice la pregunta originalmente que Ud. contestó que estaba dispuesto a condenar, interrumpió el compañero Coll Moya y el Sr. Juan Trujillo y en ese momento, cuando empezamos a discutir el compañero Coll Moya y yo, el Sr. Landráu le dijo: "di que de acuerdo con la prueba."

"R. Yo hablé con la señora en cuanto a la calor. En cuanto al Sr. Landráu yo le dije no me ha dejado terminar. Entonces Ud. me dijo terminó y yo dije yo sí.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

"P. ¿Después de todo ese incidente el compañero abogado Rodríguez Ema no le dió instrucciones?

"R. No.

"P. ¿El señor que está sentado al lado del Sr. Coll Moya no vino donde Ud.?

"R. Conmigo no habló. El estaba hablando ahí con Oscar. Conmigo no." (Bastardillas nuestras.)

Terminado este interrogatorio prestaron declaraciones bajo juramento los Lics. Gaztambide y Rivera Zayas, abogados del querellado, en esta forma:

"RUBÉN GAZTAMBIDE ARRILLAGA:
(Declara Bajo Juramento)

"Me llamo Rubén Gaztambide Arrillaga. Soy abogado. Bajo juramento prestado ante esta Asamblea declaro que ví en el momento en que el Sr. Landráu, ví y oí debo decir, que el Sr. Landráu le aconsejaba al Sr. Guillermo Rodríguez, Asambleísta Municipal, que declarara que resolvería de acuerdo con la prueba. Juro también que ví cuando la Sra. Manuela Betancourt de Conde lo hizo. Que no puedo jurar lo del compañero Rodríguez Ema porque eso no lo ví yo. Lo vió el compañero Rivera Zayas. Nada más."

"RAFAEL RIVERA ZAYAS
" (Declara Bajo Juramento)

"Me llamo Rafael Rivera Zayas: soy uno de los abogados del querellado en este caso. Aseguro y juro que durante el receso de la Asamblea el Asambleísta Sr. Landráu y el compañero Rodríguez Ema hablaron con el Asambleísta Rodríguez y le dijeron que debía

declarar que actuaría de acuerdo con la prueba. Me levanté y le dije al compañero Rodríguez Ema que yo lo sentía y que tenía que aclarar esa cuestión en el récord."

"Repreguntado por el:

"Ledo. Coll Moya:

"P. ¿Sabe si el Sr. Rodríguez oyó esa manifestación?

"R. No me cabe duda alguna porque tiene buen oído.

"P. ¿Cómo sabe que oyó, Ud. es médico?

"R. No, señor.

"P. ¿Es abogado?

"R. Sí, señor.

"P. ¿Cómo sabe que oyó?

"R. Porque he hablado con el Sr. Rodríguez y me consta que oye perfectamente bien porque me ha contestado a lo que le he hablado y estando tan cerca de las personas que mencioné, del compañero Rodríguez Ema y del Asambleísta Landráu, tuvo que oírlos.

"P. ¿Cree que debió haber oído?

"R. No. Es observación.

"P. ¿Sabe que se hicieron esas manifestaciones?

"R. Observación mía por el sentido de la vista y por el auditivo que lo tengo mejor todavía."

A su vez, el Lic. Rodríguez Ema, abogado del querellante, declaró:

"P. ¿Oyó lo que expresó el compañero Rivera Zayas?

"R. Sí, señor.

"P. ¿Es cierto que le llamó la atención de que no debía dar instrucciones al Sr. Asambleísta?

"R. Sí, señor.

"P. ¿Cuando el compañero Rivera Zayas le habló, Ud. estaba dando instrucciones a los asambleístas?

"R. No, señor.

"P. ¿Qué le contestó Ud. al compañero Rivera Zayas?

"R. Yo no recuerdo si le hice alguna manifestación. Si la hice fué en el sentido negativo.

"P. ¿No le dijo al Sr. Rivera Zayas que no le estaba dando instrucciones?

"R. Creo que le dije que no le estaba dando instrucciones. Aseguro que no le estaba dando instrucciones a este señor que no conozco."

Como puede verse, el interrogatorio al asambleísta Rodríguez consta de dos partes, primera, aquella en que categóricamente manifestó que tenía opinión formada sobre los cargos; que iba a votar en contra del querellado; que en cuanto a la culpabilidad del querellado "eso está escrito ya"; que él lo creía culpable; y, la segunda, aquella en que, habiendo transcurrido todo el tiempo necesario para llevarse a efecto el interrogatorio de los demás asambleístas y después de haber manifestado el Sr. Rodríguez que no deseaba inhibirse en el caso, declaró que lo que quiso decir anteriormente estaba sujeto a lo que demostrara la prueba. Y es en relación con esta segunda actitud del asambleísta Rodríguez que declaran bajo juramento los abogados Gaztambide y Rivera Zayas, al efecto de que oyeron cuando al asambleísta Rodríguez, durante un receso, se le aconsejó que dijera que actuaría "de acuerdo con la prueba."

Hemos resuelto que impugnado un Asambleísta Municipal y solicitada su inhibición del conocimiento de unos cargos formulados al alcalde por estar prejuiciado, si la prueba demuestra que dicho asambleísta, debiendo inhibirse, no lo hace, puede este Tribunal revocar la resolución de la Asamblea si estima que el querellado ha sido en realidad perjudicado por el prejuicio o parcialidad que dicho asambleísta pudo haber tenido contra él. *Asamblea Municipal* v. *González, Alcalde,* 55 D.P.R. 542.

En cuanto al asambleísta Rodríguez la prueba de su prejuicio consistió, como hemos visto, en su propia declaración. Ninguna prueba mejor podía presentarse, pues, como dijimos en el caso de *González,* supra, "La prueba de manifestaciones que *otras* personas hayan hecho debe ser robusta y rodeada de circunstancias que garanticen su autenticidad, *pues es muy fácil imputarle a otro cualquier manifestación . . .*" (Bastardillas nuestras.) Aquí no se trata de manifestaciones de otras personas sino del mismo asambleísta quien se encarga de demostrar su prejuicio.

No tenemos duda de que las contestaciones dadas por el asambleísta Rodríguez al interrogatorio a que fué sometido primeramente, demuestran, lo que ellas mismas dicen, a saber, que él tenía opinión formada sobre los cargos, que se proponía votar en contra del querellado, que su culpabilidad "estaba escrita ya"(¹) y que él consideraba al alcalde culpable. Es cierto que más tarde, trató de variar sus afirmaciones diciendo que resolvería el caso de acuerdo con la prueba, pero si tomamos en consideración las declaraciones de los abogados Gaztambide y Rivera Zayas en cuanto a lo ocurrido durante un receso de la Asamblea, no podemos dar crédito a la afirmación tardía de dicho asambleísta. La decisión de la Asamblea, a virtud de una votación de seis a cinco, demuestra la importancia que, en este caso específico, tenía el hecho de que la intervención de cada uno de los asambleístas al actuar como juez en el caso estuviera libre de toda clase de prejuicios. No empece el esfuerzo que hace el apelado para querer demostrar que las contestaciones dadas por el Sr. Rodríguez se debieron a su falta de preparación académica, debemos presumir que él entendía las preguntas que se le hacían y que las contestó a sabiendas del significado de sus propias palabras.

Arguye, además, el apelado que si la prueba presentada fué suficiente para sostener los cargos, la actuación del asambleísta Rodríguez no pudo perjudicar al querellado. Pero es que quien tiene que resolver, en primera instancia, si la prueba es o no suficiente, es precisamente la Asamblea Municipal, y si uno de sus miembros, cuyo voto fué decisivo en el caso, ya había formado opinión y afirmado que consideraba culpable al querellado, que eso "estaba escrito ya", su intervención tuvo necesariamente que ser perjudicial al querellado. No se trata aquí de una situación como la que surgió en el caso de *González,* supra, en que la prueba de pre-

(¹)La frase "Estaba escrito", como locución, significa "Así lo tenía dispuesto la Providencia"—Diccionario Lengua Española de la Real Academia Española.

juicios fué de referencia y de dudosa credibilidad, sino de una admisión terminante del asambleísta de su prejuicio contra el querellado.

En cuanto al tercer error señalado, si bien hubo prueba de que la Asambleísta, Sra. Conde, públicamente manifestó que la Asamblea destituiría al querellado por los cargos formulados, ella negó haber hecho tal manifestación y afirmó siempre que los resolvería de acuerdo con la prueba que se presentara.

Somos de opinión que habiéndose demostrado que el Asambleísta, Sr. Guillermo Rodríguez, debió inhibirse en este caso y no lo hizo, su intervención en el mismo perjudicó al querellado. *La resolución de la Asamblea Municipal destituyendo al querellado Federico Cordero como Alcalde de Carolina, debe ser revocada.*

El Juez Presidente Sr. Travieso no intervino.