EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* RICARDO RUBIO, acusado y apelante.

No. 4784.—*Sometido:* Noviembre 7, 1932. *Resuelto:* Abril 19, 1933.

*González Fagundo & González Jr.*, abogados del apelante; *R. A. Gómez, Fiscal*, abogado de El Pueblo, apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

El Fiscal de esta Corte Suprema solicitó la desestimación del recurso de apelación interpuesto en este caso por no haberse notificado el escrito estableciéndolo al Fiscal de la Corte de Distrito de San Juan en que se celebró el juicio y se dictó sentencia, y oídas ambas partes se accedió a lo solicitado.

No conforme el acusado apelante pidió la reconsideración y otra vez fueron oídas ambas partes por escrito y oralmente.

■■ Todo lo que consta de los autos con respecto a la notificación de la apelación es lo que sigue:

"ESCRITO DE APELACIÓN.—El Pueblo de Puerto Rico vs. Ricardo Rubio.—Criminal No. 7339.—Abandono de Menores.—A MARCELINO ROMANÍ, Fiscal de la Corte de Distrito de San Juan, y a EDUARDO LÓPEZ TIZOL, Secretario de la Corte de Distrito de San Juan, P. R.

"Atentamente notifico a. ustedes que el acusado no está conforme con la sentencia dictada en este caso con fecha 2 de febrero corriente apelando de dicha sentencia para ante la Corte Suprema de Puerto Rico.

"Humacao para San Juan, P. R., a 6 de febrero de 1932.—(fdo.) R. García Cintrón.—(fdo.) Francisco González Fagundo.—Abogados del acusado.

"Yo, Víctor Hernández Peña, debidamente juramentado declaro: Que soy mayor de edad, empleado y vecino de Humacao y que no soy parte ni tengo interés en este asunto: Que entre San Juan y Humacao, P. R. existe un servicio regular de correos con comunicación diaria: Que en el día de hoy he depositado en la oficina de correos de esta ciudad un sobre conteniendo copia fiel y exacta de la moción que precede; cuyo sobre iba dirigido al Hon. Marcelino Romaní, Fiscal de la Corte de Distrito de San Juan, P. R., a su residencia en San Juan: Que el franqueo correspondiente a dicho sobre fué debidamente satisfecho. Humacao, P. R., febrero 6, 1932. (fdo.) Víctor Hernández Peña.

"Aff. No. 890.—Jurado y firmado ante mí por Víctor Hernández Peña, mayor de edad, casado, empleado y vecino de Humacao, a quien conozco personalmente. Humacao, P. R., a 6 de febrero de 1932. (Fdo.) Luis Pereyó, Notario.—Hay un sello de Rentas Internas por $0.25, cancelado.''

El Fiscal sostiene que no es bastante. El acusado que lo es.

Con respecto a la necesidad de notificar al Fiscal debidamente el escrito de apelación para que esta corte pueda conocer del recurso, no hay cuestión. Se ha decidido repetidas veces por esta misma Corte Suprema que si la notificación no se hace, no adquiere jurisdicción la corte y el recurso debe ser desestimado sin oírse.

La cuestión a decidir es la de si en los casos criminales, puede, como en los civiles, recurrirse al correo para hacer la notificación.

Para los casos civiles la ley expresamente dispone que "la diligencia de una notificación o entrega de documentos deberá **hacerse personalmente, a la parte o a su abogado, según** proceda, o podrá diligenciarse como sigue:" Se expresan entonces los medios, uno de los cuales es el correo. Artículo 320 de nuestro Código de Enjuiciamiento Civil. Los artículos 321 y 322 continúan tratando sobre la remisión por correo. Los tres preceptos equivalen a las secciones 1011, 1012 y 1013 del Código de Enjuiciamiento Civil de California.

Si se tratara, pues, de un caso civil, habría que resolver la cuestión en favor del apelante, pero se trata de un caso penal y el fiscal insiste en que se rige exclusivamente por las disposiciones del Código de Enjuiciamiento Criminal que sólo autorizan dos formas de notificación, la personal y cuando ella no es posible la de publicación en los periódicos autorizada por el juez.

Todo lo que en efecto dispone el Código de Enjuiciamiento Criminal sobre la materia está contenido en los artículos 350 y 351, equivalentes a las secciones 1240 y 1241 del Código Penal de California. Copiados a la letra dicen:

"Artículo 350. Se establece una apelación, presentando al secretario del tribunal en que estuviere archivada la sentencia o providencia apelada, el escrito de apelación, con entrega de las copias correspondientes al abogado de la parte contraria.

"Artículo 351. Si no se pudiere hacer notificación personal de

la apelación, el juez del tribunal en que se haya sustanciado la causa, una vez convencido de esa imposibilidad, podrá dictar órdenes para que se publique dicha notificación en los periódicos por un plazo que no exceda de treinta días, equivaliendo dicha publicación a una notificación personal.''

En el original inglés de nuestra ley se usa el verbo *"to serve"*, traducido al español correctamente por ''entregar'' que lleva implícita la idea de que la entrega lo sea a la persona. Eso en cuanto al artículo 350 examinado aisladamente, que en cuanto al 351 la palabra personal se usa expresamente en ambos textos, especificándose que si no pudiere hacerse personalmente, podrá el juez del tribunal en que se sustancia la causa, una vez convencido de la imposibilidad, dictar órdenes para que se publique dicha notificación.

La parte apelante admite las anteriores conclusiones, pero parece sostener que las disposiciones del Código de Enjuiciamiento Civil son supletorias a las del Código de Enjuiciamiento Criminal y que en todo caso una notificación por correo es una notificación personal.

· Para sostener la primera proposición se limita a citar las siguientes palabras de Kerr's Cyclopedic Codes of California que aparecen al pie de la sección 1241 del Código Penal de California: ''Con respecto al servicio de la notificación en general, véase Kerr's Cyc. Code Civ. Proc. párrafos 1010, 1013 y notas.'' 4 Kerr's 1183. Es bien poco, en verdad.

Y para sostener la segunda se refiere al mismo autor 3 Kerr's 1524, nota 17 al pie de la sección 1011 del Código de Enjuiciamiento Civil de California que dice:

''Notificación personal.—'La entrega' que constituye notificación personal no necesita ser hecha por la persona que trata de hacer la notificación, sino que puede ser efectuada por conducto de un amanuense o mensajero, o de cualquier agente que pueda realizar la entrega, y cuando la notificación es entregada en esa forma se convierte en una notificación personal. El hecho de que la persona que va a ser notificada resida o tenga su oficina en lugar distinto al de la persona que hace la notificación no exige que la notificación sea hecha por correo ni excluye una notificación personal, y la persona que trata

de efectuar la notificación puede valerse de un agente como la Wells Fargo & Co., o del correo, tan válidamente' como si hubiese empleado cualquier mensajero. La notificación hecha por conducto de tal agente se convierte en personal, y prueba de la entrega en esa forma establece una notificación personal.—Heinlen v. Heilbron, 94 Cal. 636, 640, 30 Pac. Rep. 8.'' 3 Kerr's Cyclopedic Codes of California, Primera parte, 1524.

Si al suscitarse por el fiscal la cuestión, el apelante no se hubiera limitado a descansar en el récord sino que hubiera presentado prueba demostrativa de que el pliego enviado conteniendo la notificación fué en efecto entregado, recibido y abierto por el fiscal del distrito dentro del término de ley quedando así enterado personalmente de la interposición del recurso, podría sostenerse que la notificación por correo había llegado a ser una personal, sin necesidad de la ayuda de ningún precepto estatutario específico. El apelante no debió descansar únicamente en la notificación por correo como si se tratara de un caso civil. En lo civil la ley autoriza expresamente ese medio y basta con la prueba de que se depositó el pliego en el correo para que la entrega del mismo a la persona a quien va dirigido quede demostrada. No así en lo criminal en que no existe la autorización.

En el mismo caso citado por Kerr's, *Heinlen* v. *Heilbron,* 94 Cal. 636, la opinión de la corte continúa así:

''La notificación por correo provista por el artículo 1012 no tiene por miras la entrega como parte de la notificación, conforme se ve por las disposiciones del artículo 1013 al efecto de que 'la notificación queda consumada al tiempo de depositarse' en la oficina postal. Tal notificación es conocida con el nombre de notificación sustituta y el objeto es que ella sustituya y equivalga como cuestión de derecho y en sus efectos a una notificación personal. Sin embargo, como es regla general de que todos los procedimientos legales sean notificados personalmente y de que una notificación sustituta pueda hacerse tan sólo en los casos y en la forma dispuestos por el estatuto, se desprende que incumbe a aquéllos que tratan de aprovecharse de esta clase de notificación hacer que aparezca claramente de los autos que el caso es uno en que tal notificación está permitida, y que la forma provista

por el estatuto para la notificación ha sido seguida estrictamente.'' Heinlen v. Heilbron, 94 Cal. Rep. 640.

No debe olvidarse que nos encontramos frente a un recurso puramente estatutario y que por lo tanto es necesario el cumplimiento estricto de la ley para ejercitarlo. Citando el caso de *City of Portland* v. *Nottingham,* 58 Oregon 1, esta corte dijo en el de *El Pueblo* v. *Dones,* 18 D.P.R. 277, 279, ''Una apelación no es una materia de derecho, sino un privilegio estatutario, y aquél que ejercita el privilegio tiene el deber de hacerlo en la forma especificada por la ley.''

Ni las partes han citado ni hemos podido encontrar nosotros casos que resuelvan la exacta cuestión aquí envuelta, pero nos parece oportuno transcribir a manera de ilustración lo dicho por la Corte Suprema de California en el caso de *People* v. *Brown,* 148 Cal. 743. Lo tomamos del alegato del fiscal. Es así:

''El acusado fué llevado a juicio y convicto de un delito de asesinato en primer grado y se le impuso la pena de muerte. Él apela de dicha sentencia y de una orden negando una moción de nuevo juicio.

''El artículo 1240 del Código Penal provee que en un caso criminal se establece apelación radicando con el secretario de la corte en la cual se ha dictado la sentencia o la orden de que se ha apelado, un escrito de apelación de dicha sentencia u orden y entregando personalmente una copia del mismo al abogado de la otra parte. En el caso de People v. Colón, 119 Cal. 668, se resolvió que el procedimiento especificado en la sección 1240 debe seguirse para que se pueda conferir jurisdicción a la corte para oír y determinar la apelación. El caso de Colón cita y copia el caso de People v. Bell, 70 Cal. 35, donde se dijo: 'El récord aquí no demuestra que la notificación de la apelación se haya entregado personalmente a nadie. La ley requiere que la misma sea entregada personalmente a los abogados de la otra parte (Cód. Penal, artículo 1240), y el récord debe demostrar eso. (People v. Phillips, 45 Cal. 44; People v. Clark, 49 Cal. 455). No siendo así el caso, la apelación no puede considerarse.' Toda vez que de la omisión y del error cometido se llamó la atención al apelante por el alegato de la otra parte y no se ha hecho esfuerzo alguno para corregir tal omisión o error o demostrar que el servicio personal de la notificación fué hecho, debemos llegar a la conclusión de que no existió tal servicio per-

sonal y que la corte nunca tuvo jurisdicción para conocer de la apelación.''

Parece conveniente agregar que aunque no era ello necesario, para penetrarnos mejor de la justicia del caso, hemos examinado la transcripción y, a primera vista, creemos que de entrar en el fondo del asunto, la sentencia apelada debería confirmarse.

Dos son las cuestiones que suscita el apelante en su alegato, la insuficiencia de la denuncia y la falta de prueba para sostener la sentencia.

La sentencia se dictó en los siguientes términos:

''. . . . la Corte declara a Ricardo Rubio culpable de Abandono de Menores y le impone la pena de sufrir 90 días de cárcel con trabajos forzados, dejándose en suspenso dicha sentencia de acuerdo con los preceptos en la Ley 35 de 1931, siempre que dicho acusado depósite en la Secretaría de la Corte en los tres primeros días de cada mes, empezando desde este mes de febrero de 1932, la suma de $50.00 para ser dedicada a la alimentación de su hijo menor, pero si en cualquier mes dejare de cumplir esta condición, entonces la sentencia de cárcel de 90 días, entrará en toda su fuerza y vigor, y deberá ser reducido a prisión el acusado.''

## La denuncia, en lo pertinente, dice:

''Que desde el 13 de noviembre de 1931, y en la calle San José 26 de San Juan. P. R., del Distrito Judicial Municipal de San Juan. P. R., que a la vez forma parte del Distrito Judicial del mismo nombre el referido acusado Ricardo Rubio allí y entonces ilegal, voluntaria, maliciosa y criminalmente y sin excusa legal que lo justifique tiene en completo estado de abandono a su hijo legítimo Ricardo Rubio Sacarello, de un año tres meses de edad, sin que lo provea de alimentos, vestuarios, medicinas y de todo aquello indispensable para la subsistencia del mismo.''

## El precepto penal infringido es como sigue:

''Artículo 263.—Todo padre o madre de un hijo legítimo, legitimado, natural o ilegítimo reconocido y adoptivo que voluntariamente y sin excusa legal, dejare de cumplir cualesquiera de las obligaciones que la ley le impone, de proveerle del indispensable alimento, vestuario o asistencia médica, incurrirá en *misdemeanor; . . .''*

Y de la declaración de Carmen Sacarello, una de los testigos que presentó el fiscal, a la que dió entero crédito la corte, surgen los siguientes hechos:

"P.—¿Quién era su esposo?—R. Ricardo Rubio.—¿Dónde está él.—R. Aquel joven que está allí.—P. ¿El acusado?—R. Sí señor. —P. ¿Cuándo se casó usted con él?—R. El 23 de octubre de 1928. —P. ¿En su matrimonio tuvo usted algún hijo con el acusado?— R. Un niño.—P. ¿Cómo se llama?—R. Ricardo Rubio.—P. ¿Qué edad tiene?—R. Un año, cuatro meses . . .—P. Explíquele al señor Juez lo que usted sepa en este caso.—R. Que desde el 13 de noviembre él no me pasa a mí, a su hijo mejor dicho, y que le he requerido de todas maneras para que él me le dé bondadosamente y él nunca ha querido. Yo he tenido a mi hijo enfermo, y le he llamado para que le dé medicinas y él me ha dicho que no tiene que dar nada para su hijo. Yo lo he llamado a él de todas maneras diciéndole que su hijo estaba enfermo y me contesta que no tiene que dar nada. El día de Reyes lo llamé para ver si le ponía algo a su hijo y me dijo que no tenía que darle nada . . . Yo le he dicho: 'Mira, Ricardo, yo debo leche de mi hijo, me la han quitado.' Y él me contestó que no tiene que darle nada. Además de la leche, que yo le mandé a mi hijo con los zapatitos rotos para que él le comprara unos zapatitos, y me dijo que sí que se los iba a traer, hasta la fecha.—P. ¿Cuánto tiempo hace que no le da alimentos a su hijo?—R. Desde el 13 de noviembre.— P. ¿De qué año?—R. Del 1931.—P. ¿Y vestido, cuánto tiempo hace que no le da al niño?—R. El mismo tiempo.—P. ¿Y medicinas?—R. Todo desde el 13 de noviembre.—P. ¿Dónde vive usted con su niño? —R. En San José 26.—P. ¿Aquí en San Juan?—R. Sí, señor.—P ¿Durante todo ese tiempo?—R. Sí, señor.—P. ¿Usted sabe en qué se ocupa el acusado?—R. El vive de rentas.—P. ¿Qué rentas tiene? —R. Como cuatrocientos pesos mensuales.—P. ¿De dónde vienen esas rentas, si usted lo sabe?—R. De una finca que él tiene, una que se llama Finca Mulas y otra Mambiche, y otras cuantas por ahí.—P. ¿Cómo sabe usted que él tiene rentas?—R. Porque cuando yo vivía con él, las tenía.—P. ¿El ha vendido eso?—R. Que yo sepa, no. La finca Las Mulas está arrendada a la Central Pasto Viejo.—P. ¿Cuánto paga de arrendamiento?—R. Algunos nueve mil pesos para los tres . . .—La Corte: P. ¿El hecho cierto es que el día 13 de noviembre el niño no recibió alimentos del padre?—R. Ninguno; solamente que al que pasa por allí por casa mi madre le dice que mi hijo llora de hambre y ella le pide pesetas para comprarle leche.—P. ¿De modo que el niño llora de hambre?—R. Sí, señor."

Las contenciones del apelante de que existía pendiente una acción civil en reclamación de alimentos y de que por el hecho del divorcio habiendo perdido el padre la custodia y patria potestad del hijo no viene obligado a alimentarlo sino cuando se demuestre que la madre es insolvente, carecen de mérito.

*Por virtud de todo lo expuesto, debe declararse no haber lugar a la reconsideración solicitada.*

Los Jueces Asociados Señores Hutchison y Córdova Dávila están conformes con el resultado.