Rexford G. Tugwell, Gobernador de Puerto Rico, querellante y apelante, *v.* Manuel A. Barreto, Alcalde, querellado y apelado.

Núm. 14.—*Sometido:* Diciembre 4, 1945. *Resuelto:* Diciembre 13, 1945.

502

*Hon. Procurador General E. Campos del Toro, Guillermo Gil Rivera y Luis F. Camacho, Procuradores Generales Auxiliares,* abogados del apelante; *José Rafael Gelpí,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

De conformidad con la sección 29 de la Ley Municipal,(¹) el Gobernador formuló ante la Asamblea Municipal de Mayagüez cinco cargos contra Manuel A. Barreto, Alcalde de

---

(¹) Ley núm. 53, Leyes de P. R., 1928 (pág. 335), según fué enmendada por la sección 9 de la Ley núm. 98, Leyes de Puerto Rico, 1931 (pág. 595).

Mayagüez, solicitando su destitución. La Asamblea desestimó el procedimiento por el fundamento de que los cargos eran *res judicata*, apelando el Gobernador de dicha resolución.

El Alcalde ha solicitado la desestimación de la apelación por varios motivos. Alega primeramente que el escrito de apelación debió dirigirse al Alcalde y a la Asamblea y no a este Tribunal. Nos hemos negado a interpretar el estatuto pertinente de manera tan restrictiva aun en casos que envuelven apelaciones de las cortes de distrito. Véase *Roig Commercial Bank* v. *Sucn. Lugo,* 34 D.P.R. 155. Aquí el procedimiento debe ser lo más liberal posible. Este caso lo gobierna la sección 29 de la Ley Municipal que simplemente dispone que se radique un escrito de apelación.(²) Nada hay en ella que exija que como cuestión de forma el escrito deba dirigirse a alguna persona. El dirigir el escrito en este caso—a la Hon. Corte Suprema de Puerto Rico—está por tanto de más; y la forma del escrito, que es la usual en cuanto al resto, es suficiente.

El Alcalde también alega que la Asamblea Municipal no ha sido notificada debidamente del escrito de apelación como cuerpo o entidad. Las notificaciones fueron enviadas por correo a todos los miembros de la Asamblea; pero lo importante es que una de ellas fué enviada a Eduardo A. Ruiz, Presidente, una a Marcel Courtier, Vicepresidente y una al Dr. J. E. Arrarás, Secretario Municipal Interino.

---

(²) La sección 29, en parte, lee como sigue:

"Contra la resolución que dictare la asamblea municipal destituyendo al alcalde, o negándose a destituirlo, según fuere el caso, podrá el alcalde, o el Gobernador de Puerto Rico, en su caso, recurrir para ante la Corte Suprema de Puerto Rico dentro de un término de diez días después de notificada la parte perjudicada de la resolución recurrida. Asimismo y en los mismos términos podrá el alcalde apelar para ante el Tribunal Supremo en caso de haber sido el Gobernador de Puerto Rico el que lo destituyere.

"El recurso de apelación se tramitará mediante escrito radicado ante el Tribunal Supremo y notificado a la Asamblea Municipal o al Gobernador de Puerto Rico en su caso, y deberá acompañarse de un pliego conteniendo los fundamentos de hecho y de derecho en que se apoya . . ."

Además, por la misma vía se le envió también una notificación al abogado del Alcalde. Con esto se cumplió con la sección 29. Claramente no es de aplicación el caso de *Ramírez v. Beverley,* 44 D.P.R. 329, en el cual descansa el Alcalde, y que resuelve que una Asamblea Municipal debe actuar como un cuerpo, y no a través de los actos individuales de sus miembros. Aquí el Gobernador se tomó la precaución de notificar la apelación a todos los miembros individuales de la Asamblea. Pero eso no anula el hecho de que también notificó a Ruiz, a Courtier y a Arrarás, como Presidente, Vicepresidente y Secretario, respectivamente. Al así hacerlo claramente notificó a la Asamblea como cuerpo.

◼ Pasemos al próximo motivo. El artículo 322, del Código de Enjuiciamiento Civil, dispone que "En los casos de remisión por correo, la notificación o documentos deberán depositarse en la administración de correos, dirigidos a la persona a quien hubiere de intimarse, o hacerse la entrega, a su oficina o residencia *pagándose el franqueo.* La notificación o la entrega de documentos queda cumplida al tiempo de hacerse el depósito . . . .". (Bastardillas nuestras). Véase también la Regla 3(*b*) de las Reglas de Enjuiciamiento Civil. Aquí el apelante notificó a la Asamblea por correo certificado. Pero el Alcalde alega que la notificación fué defectuosa a tenor con el artículo 322 toda vez que el Presidente de la Asamblea y otras personas tuvieron que pagar al correo 7 centavos cada una como franqueo insuficiente antes de que pudieran obtener la entrega de las cartas que contenían sus notificaciones.

Debe haber un cumplimiento estricto de la disposición estatutaria en cuanto a la notificación sustituta por correo, especialmente cuando como aquí la notificación se considera cumplida cuando se deposita el sobre en el correo. *Gascón v. Alvarez,* 28 D.P.R. 362; *Roig Commercial Bank* v. *Sucn. Lugo,* 34 D.P.R. 155; *Fontánez* v. *Sucn. Buxó,* 34 D.P.R. 709; véase *Autoridad de Fuentes Fluviales* v. *Corte,* ante,

pág. 480.(³)    Pero en este caso el apelante envió las notificaciones por correo certificado aun cuando el estatuto no contiene tal requisito.    Y le adhirió 50 centavos en estampillas a cada sobre después de haberle informado el empleado del correo, quien pesó las cartas, que éste era el franqueo correcto. En una declaración jurada radicada en este caso, el Administrador de Correos de San Juan culpa a dicho empleado de la deficiencia de 7 centavos.    No nos detenemos a investigar cuál sería el resultado si los destinatarios se hubieran negado a pagar la deficiencia de 7 centavos o a aceptar la entrega.    Tampoco nos confrontamos con la situación en que se exigía a los destinatarios pagar una gran parte del franqueo.    Aquí se usó el correo certificado, no exigido por la Ley; se pagaron 50 centavos de los 57 centavos; un empleado del correo le aseguró al apelante que el franqueo necesario ascendía a 50 centavos; y los funcionarios postales, quienes frecuentemente le devuelven al remitente aquellas cartas que solamente tienen una pequeña porción de las estampillas necesarias, aparentemente fueron de opinión que sustancialmente se había pagado el franqueo, ya que de hecho entregaron las cartas a los destinatarios quienes acusaron recibo de las mismas.    Bajo todas estas circunstancias, no podemos resolver que el apelante no remitiera las notificaciones por correo con el franqueo pagado.

Alega también el apelante que, de cualquier modo, el escrito de apelación exigido por la sección 29 no puede nunca notificarse por correo.    Si bien hasta el presente no hemos considerado este punto, casos análogos nos convencen de que el notificar el escrito por correo es suficiente bajo los términos de la sección 29.    Cf. *Vando* v. *Corte Municipal,* 65 D.P.R. 6; *Pueblo* v. *Rubio,* 44 D.P.R. 889; *Pueblo* v. *Mercado,* 45 D.P.R. 750.

(³) La notificación por correo queda cumplida al tiempo de hacerse el depósito, aun cuando la carta sea recibida de hecho una vez expirado el período estatutario para hacer la notificación. *Ex parte Bithorn Vda. Benítez,* 53 D.P.R. 584, y casos allí citados; *Carrión* v. *Lawton,* 43 D.P.R. 53, 311.    Véase *Próspero Fruit Co.* v. *Tribunal de Contribuciones,* 64 D.P.R. 661.

Otro motivo para la desestimación es que si bien el apelado fué notificado del escrito de apelación dentro de diez días de la resolución de la Asamblea, no se le notificó dentro de dicho término con el pliego conteniendo los fundamentos de hecho y de derecho en apoyo del recurso de apelación según lo exige la sección 29. El querellado indica correctamente que este documento es sustancialmente equivalente a un señalamiento de errores. Tomándolo como tal, no hay razón alguna por la cual la Legislatura hubiera dispuesto como requisito jurisdiccional que el señalamiento de errores, lo mismo que el escrito de apelación, debiera ser notificado dentro del término concedido para apelar. Para las apelaciones en los casos civiles corrientes no hay tal requisito en esta jurisdicción. En tales casos se confiere jurisdicción a esta Corte por la radicación, sin más, del escrito de apelación. Artículo 296, Código de Enjuiciamiento Civil; *Campos* v. *Central Cambalache,* 64 D.P.R. 58; *Guilhon & Barthelemy* v. *Corte,* 64 D.P.R. 303.([4]) El señalamiento de errores aparece por primera vez en el alegato del apelante ante esta Corte. Regla 42 de nuestro Reglamento. Una interpretación razonable de la sección 29 es por tanto que el apelado debe ser notificado con copia de dicho señalamiento de errores con tiempo razonablemente anterior a la vista en apelación con el fin de que pueda prepararse para la misma. Habiendo sido el Alcalde y la Asamblea notificados con copia del señalamiento el 26 de noviembre y celebrándose la

---

([4]) Esto es de conformidad con la tendencia moderna. Bajo la Regla 73 (a) de las Reglas Federales de Enjuiciamiento Civil el escrito confiere jurisdicción a la corte de apelaciones; después de radicado, el dejar de realizar cualquiera de los pasos posteriores exigidos en apelación no afecta la validez de la apelación, si bien puede proporcionar un fundamento para su desestimación. Aun bajo la antigua práctica Federal, es dudoso en extremo si el apelado está correcto en su afirmación de que la radicación de un señalamiento de errores dentro del período concedido para apelar era un requisito jurisdiccional. 3 Moore's Federal Practice, sección 73.01, págs. 3389-90. De cualquier modo, cualquiera que pueda haber sido la antigua Regla Federal, ya no constituye un requisito jurisdiccional en casos federales. Y nunca ha sido la regla de esta jurisdicción.

vista el 4 de diciembre, no procede la moción de desestimación por este motivo.

■ El próximo fundamento de desestimación merece poca discusión. El apelado afirma que la decisión de la Asamblea declarando con lugar la moción que levantó la defensa especial de. *res judicata* no es una resolución negándose a destituir al Alcalde y por tanto no es apelable bajo la sección 29. Su argumento es que esta decisión goza de la naturaleza de una resolución de la corte de distrito declarando con lugar una excepción previa; que solamente podría apelarse de una "sentencia" posterior dictada sobre la resolución; y que toda vez que el apelante nunca solicitó se dictara tal "sentencia", no hay sentencia definitiva contra la cual apelar. Basta decir que una contención similar se trajo y se rechazó en *Ballester* v. *Tribunal de Apelación de Contribuciones,* 60 D.P.R. 768, 779–80; *cf. Winship, Gobernador* v. *Asamblea Municipal,* 53 D.P.R. 138.

■ La sección 29 provee la apelación solamente por el Gobernador o el Alcalde; en un caso que surja de cargos formulados por un miembro de la Asamblea o por un ciudadano, la decisión negándose a destituir al Alcalde no es apelable. Por tanto, el apelado arguye que no procede la apelación en este caso porque estos cargos fueron formulados por un ciudadano particular de nombre R. G. Tugwell y no por el Gobernador. Afirma que para que el Gobernador sea quien formule los cargos deben éstos tener la cláusula introductora, "Yo, R. G. Tugwell, Gobernador de Puerto Rico, formulo los siguientes cargos". Pero estos cargos fueron formalmente firmados por R. G. Tugwell, Gobernador. Esto es suficiente para hacer dichos cargos la actuación oficial del Gobernador.

■ El apelado también alega que la sección 29, en tanto en cuanto concede algún derecho de apelación, es inconstitucional y nula toda vez que discrimina contra los asambleístas individuales y los ciudadanos particulares quienes, con-

trario al Gobernador, no pueden apelar de una decisión adversa en cargos formulados por ellos. La mejor contestación a esta contención es que "la constitucionalidad de una ley no puede ser .impugnada a menos que el que la ataque demuestre que dicha ley le priva de derechos protegidos por la Constitución." *Colegio de Farmacéuticos* v. *Junta de Farmacia,* 60 D.P.R. 811–816; *Gobierno de la Capital* v. *Consejo Ejecutivo,* 63 D.P.R. 434, 464–67. Aquí el Alcalde no es el que apela; por tanto no puede quejarse de alegados defectos constitucionales en una ley que gobierna tales apelaciones.

Pasando a los méritos de la apelación, el apelante alega primeramente que la Asamblea cometió error al desestimar la moción para que se inhibieran tres Asambleístas, y al no permitirle al apelante presentar prueba en apoyo de la misma. La moción alegaba que los Asambleístas Fernando del Toro y Félix Castillo estaban descualificados para intervenir en este procedimiento de residencia, toda vez que estaban "interesados directa o indirectamente en contratos celebrados con" el Municipio, en violación de la sección 10 de la Ley Municipal que autorizaba su destitución del cargo mediante el procedimiento de *quo warranto,* a tenor con la doctrina establecida en *Pueblo ex rel. Pérez* v. *Manescau,* 33 D.P.R. 739; que Pedro Barbosa no sabe leer ni escribir, en violación de la sección 18 de la Ley Municipal, que contiene el saber leer y escribir como uno de los requisitos para ser miembro de la Asamblea; que en la Corte de Distrito de Mayagüez se habían radicado contra dichas personas procedimientos de quo warranto alegando estos fundamentos y que la prueba de estos cargos está en manos del Gobernador.

La Asamblea permitió al Gobernador que introdujera en evidencia en apoyo de la moción de inhibición las querellas radicadas en los procedimientos de quo warranto, pero se negó a oír evidencia para establecer los hechos alegados en los recursos de quo warranto. No creemos que esta actua-

ción de la Asamblea sea errónea. Dentro del procedimiento de residencia no procede ventilar recursos de quo warranto. Eso debe hacerse en la corte de distrito y no aquí mediante ataque colateral. Si el querellante resulta victorioso en la corte de distrito, las tres personas envueltas dejarán de ser miembros de la Asamblea. Pero hasta que se les separe mediante sentencia firme en el procedimiento adecuado, tienen todos los deberes y prerrogativas de los Asambleístas, incluyendo la intervención en procedimientos de residencia, a menos que los cargos en los casos de quo warranto estén relacionados con los cargos envueltos en el procedimiento de residencia, o a menos que estén descualificados para intervenir por otros motivos. La Asamblea no cometió error al negarse a oír prueba sobre los cargos envueltos en los procedimientos de quo warranto que no estaban relacionados con los de este procedimiento.

Habiéndose rehusado correctamente la admisión de la evidencia para probar las alegaciones en los procedimientos de quo warranto, la única evidencia ante la Asamblea en cuanto a la moción de inhibición fué el hecho de que se habían radicado los tres procedimientos de quo warranto. Pero el mero hecho de que estuvieran pendientes los procedimientos de quo warranto, que el apelante ni alegó ni probó tuvieran alguna relación con los cargos aquí envueltos, no podía tener el efecto de descualificar a los asambleístas en este caso. De otro modo, cualquier persona interesada en impedir que un asambleísta desempeñara sus deberes en tales casos podría realizar su propósito meramente haciendo que se radicara un procedimiento de quo warranto contra él en relación con un asunto enteramente diferente.

El apelante también alega que la Asamblea cometió error al declarar sin lugar la moción de inhibición por el fundamento de que la Asamblea le impidió ofrecer prueba de prejuicio por parte de estos tres asambleístas. Si bien

las mismas consideraciones no siempre prevalecen al determinar la inhibición por prejuicio en esta clase de casos al compararse con la inhibición de jueces, el apelante tenía derecho a los fines de la inhibición a alegar y a probar el prejuicio. *La Asamblea Municipal* v. *González, Alcalde*, 55 D. P.R. 542; *Mangual, Alcalde* v. *Poventud, Juez*, 60 D.P.R. 824; véase *Junta Insular de Elecciones* v. *Corte*, 63 D.P.R. 819. Pero la dificultad está en que los abogados del Gobernador no levantaron este punto en la vista de la residencia: el récord guarda silencio en cuanto a cualquier sugestión, ya fuera por vía de alegación, prueba u oferta de prueba, en relación con el prejuicio. Por el contrario, la moción de inhibición y la prueba ofrecida en apoyo de la misma se limitaron a la descripción de los procedimientos de quo warranto. No podemos examinar la cuestión de prejuicio cuando el Gobernador nunca la levantó ni ofreció probarla ante la Asamblea. La Asamblea no cometió error al declarar sin lugar la moción de inhibición.

Finalmente llegamos a la única cuestión sustancial en el caso—el supuesto error de la Asamblea al resolver que los cargos presentados por el Gobernador eran *res judicata*. Los cargos son en sustancia que el Alcalde había usado impropiamente ciertos fondos municipales. El 4 de octubre de 1945, una semana antes de que se radicaran los cargos del Gobernador, R. Arcelay, un ciudadano particular, presentó contra el Alcalde de acuerdo con la sección 29 cargos sustancialmente similares envolviendo los mismos fondos; los días 8 y 9 de octubre se celebró una vista sobre los mismos, a pesar del hecho de que la sección 29 requiere que el Alcalde sea notificado con copia de los cargos cinco días antes de la fecha de la vista; y la Asamblea se negó a destituir al Alcalde. La sección 29 no le confiere al ciudadano querellante derecho de apelación alguno ante este Tribunal bajo dichas circunstancias, y Arcelay no intentó apelar ni obtener de algún otro modo la revisión de la decisión. Basada

en estos hechos, la Asamblea, con votación de 7 a 6, desestimó los cargos en este caso por ser *res judicata*.

La cuestión de si es aplicable y hasta qué extremo la *res judicata* a las órdenes de agencias administrativas, ha suscitado considerable discusión. A diferentes agencias con funciones diversas hay que aplicarles reglas distintas; en análisis final, la contestación depende del carácter del Tribunal, la naturaleza del caso y, sobre todo, las disposiciones específicas del estatuto envuelto.([5]) Pero el presente caso puede decidirse sin considerar extensamente estos problemas.

Podría admitirse que una Asamblea Municipal está en libertad de corregir sus propias determinaciones anteriores cuando ejercita sus funciones legislativas; esto es así en cuanto a agencias administrativas cuando ejercitan una función quasi legislativa, como la de fijar tarifas. (Véanse *Prentis* v. *Atlantic Coast Line*, 211 U. S. 210; *State Comm'n* v. *Wichita Gas Co.*, 290 U. S. 561; *Atlantic Coast Line* v. *Florida*, 295 U. S. 301; *Arizona Grocery* v. *Atchison Ry.*, 284 U. S. 370; *Tagg Bros.* v. *U. S.*, 280 U. S. 420; *Oklahoma Packing Co.* v. *Gas Co.*, 309 U. S. 4). Pero hemos resuelto que una Asamblea Municipal ejerce poderes quasi judiciales cuando ventila un procedimiento de residencia contra un Alcalde. *Asamblea Municipal* v. *González, Alcalde*, 55 D.P.R. 542, 560.

Tal procedimiento es de naturaleza contencioso; está clasificado correctamente como quasi judicial; y el interés público en impedir la relitigación bajo dichas circunstancias de los mismos puntos entre las mismas partes, se cumple aplicando el principio de *res judicata* (véanse *Mayagüez Light and Power Co.* v. *Tribunal de Contribuciones*, 65 D.P.R. 30, 36, escolio 2; *Southern Pac. Co.* v. *Van Hoosear*, 72 F.2d 903 (C.C.A.9th, 1934); *Farm Investment Co.* v. *Carpenter*, 61 P. 258 (Wyo. 1900); *Cardinal Bus Lines* v. *Consolidated Coach Corp.*, 72 S.W.2d 7 (Ky. 1934); *Pelham Hall Co.* v. *Hasset*,

---

([5]) Parker, *Administrative Res Judicata*, XL Ill.L.Rev. 56; *Res Judicata in Administrative Law*, 49 Yale L.J. 1250; Gregory, *Administrative Law: Administrative Decisions as Res Judicata*, 29 Calif.L.Rev. 741.

512

147 F.2d 63 (C.C.A. 1st, 1945); *Beley* v. *Naphtaly*, 169 U. S. 353; 150 A.L.R. 1198; 140 A.L.R. 801; 122 A.L.R. 550; 1 Freeman *on Judgments,* 5th ed., sección 393, pág. 855. Pero *cf. Mulcahy* v. *Public Service Commission,* 117 P.2d 298 (Utah 1941); *Del Maso* v. *Board of County Commissioners,* 34 A.2d 464 (Md. 1943)). Por consiguiente, si el Gobernador hubiera formulado tanto los primeros cargos como los segundos, se podría alegar que no debe permitírsele molestar a un Alcalde con cargos formulados por él anteriormente y por los que el Alcalde ha sido exonerado.

Pero cuando examinamos los hechos del presente caso, encontramos que el Gobernador no presentó los primeros cargos. Un ciudadano, carente de las facilidades investigadoras del Gobernador, presentó cargos que, después de celebrarse una vista antes de lo que disponía el estatuto, fueron desestimados mediante decisión contra la cual no se permite apelación. Si la intención de la Legislatura hubiera sido que bajo dicha circunstancia el Gobernador estaría impedido de formular dos días después, cargos basados en los mismos hechos, en tal caso la Legislatura ha establecido un procedimiento inútil que haría de la justicia una farsa. No podemos imputarle tal intención a la Legislatura. Tampoco la exige el artículo 1204 del Código Civil o las autoridades aquí citadas.

Pasando por alto la contención del apelado en cuanto a la identidad y conexión entre las partes,(6) el dejar de aplicar la *res judicata* en el presente caso emana del hecho de que los cargos del ciudadano y aquéllos del Gobernador son en efecto

---

(6) El apelado descansa en la Regla 23 (a) (3), Reglas de Enjuiciamiento Civil, y en casos tales como los que se encuentran en la Anotación en 64 A.L.R. 1262, al argüir que la decisión en un caso radicado por un ciudadano en el interés público es obligatoria sobre todos los otros ciudadanos, incluyendo al Gobernador en su capacidad oficial. En vista de nuestra conclusión de que la identidad de causas de acción no está presente cuando el Gobernador formula cargos similares á aquéllos previamente formulados por un ciudadano, es innecesario examinar esta teoría del apelado en relación con la identidad de partes. De igual manera no tenemos que determinar, ya que no está envuelta aquí, la cuestión de si un ciudadano está impedido de formular el mismo cargo que ya se ha determinado en una querella radicada por otro ciudadano.

legal diferentes causas de acción. Contrario a la situación en casos criminales o en otros casos, donde el procedimiento no se afecta en sustancia por la identidad del querellante, aquí el ciudadano querellante gobierna su caso sin intervención del Gobernador o de cualquier otro funcionario gubernativo. Y, lo que es más importante, en caso de una decisión negándose a destituir al Alcalde, el ciudadano no tiene derecho de apelación. El resultado práctico por tanto es que la Legislatura ha establecido dos clases diferentes de acciones quasi judiciales. En la primera, el ciudadano debe estar satisfecho con la exoneración dada al Alcalde por la Asamblea. Pero en la segunda la Legislatura dispuso un procedimiento diferente cuando el cargo era tan serio y sustancial que el Gobernador creyó conveniente formularlo. El derecho de apelación a este Tribunal por el 'Gobernador en el caso de una decisión negándose a destituir al Alcalde es la llave para esta situación. Al disponer que el Gobernador, pero no el ciudadano, puede apelar la Legislatura reconoció que los cargos del Gobernador están en un plano diferente y deben tramitarse diferentemente; vg. que una diferente causa de acción está envuelta. En su consecuencia, la Asamblea Municipal cometió error al declarar con lugar la moción levantando la defensa especial de *res judicata*. Véase *Laloma v. Fernández*, 61 D.P.R. 569; *Restatement, Judgments*, secciones 45–48, 61–63; *Avellanet v. Porto Rican Express Co.*, escolio 11, 64 D.P.R. 693, 703.

*La decisión de la Asamblea Municipal será revocada y el caso devuelto con instrucciones de que se celebre una vista en cuanto a los cargos formulados por el Gobernador.*