REXFORD G. TUGWELL, GOBERNADOR DE PUERTO RICO, sustituído por JESÚS T. PIÑERO, querellante y apelante, *v.* MANUEL A. BARRETO, ALCALDE DE MAYAGÜEZ, querellado y apelado.

Núm. 16.—*Sometido:* Junio 27, 1947. *Resuelto:* Julio 7, 1947.

---

(¹)*Cf. G. H. Hammond Company* v. *Diego Agüeros & Co.,* 30 D.P.R. 610 y *Topeka Flour Mill Co.* v. *S.I. La Constancia,* 39 D.P.R. 622.

*Hon. Procurador General Luis Negrón Fernández, José C. Aponte, Fiscal Especial General, y Guillermo A. Gil, Procurador General Auxiliar,* abogados del apelante; *José Rafael Gelpí* y *Mario Figueroa del Rosario,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

Una vez más el caso para residenciar al Alcalde de Mayagüez se somete a la consideración de este Tribunal. Hasta

la fecha, no obstante los esfuerzos del Gobernador, no se ha logrado que la Asamblea Municipal de aquella ciudad se disponga a recibir la evidencia de los cargos en su totalidad y a dictar una decisión en los méritos.

Hace algún tiempo, un ciudadano particular radicó cargos contra el Alcalde de Mayagüez, y la Asamblea Municipal, después de oír la prueba, exoneró al querellado. De conformidad con la sección 29 de la Ley Municipal, solamente el Alcalde y el Gobernador pueden recurrir ante este Tribunal para revisar la decisión de la Asamblea en casos de residencia contra el Alcalde. Con tal motivo, el 11 de octubre de 1945, el Gobernador presentó contra el Alcalde, ante la Asamblea Municipal, un pliego conteniendo los cargos que expondremos en el curso de esta opinión. En la audiencia celebrada en relación con dichos cargos, a moción del querellado, la Asamblea los desestimó por entender que la decisión recaída en la querella radicada por el ciudadano particular, constituía *res judicata*. Recurrió el Gobernador para ante este Tribunal, siendo la decisión de la Asamblea Municipal revocada con fecha 13 de diciembre de 1945 y devuelto el caso ''con instrucciones de que se celebre una vista en cuanto a los cargos formulados por el Gobernador.'' *Tugwell, Gobernador,* v. *Barreto,* 65 D.P.R. 500.

El 26 de mayo de 1947 se celebró la nueva vista, no obstante haberse remitido el mandato de este Tribunal a la Asamblea Municipal desde el 29 de enero de 1946. Tan pronto quedó constituída la Asamblea, el Alcalde, por conducto de sus abogados, notificó a la representación legal del Gobernador, una nueva contestación y un escrito de excepción previa dirigidos contra los cuatro primeros cargos. Oídas las partes, la excepción previa fué declarada con lugar por votación de ocho a cinco.

Ordenada la eliminación de los cargos objeto de la excepción previa y denegada la moción de reconsideración presentada por los abogados del Gobernador, se procedió a oír la

prueba del querellante en apoyo del quinto cargo. Oída dicha prueba, el querellado pidió un receso para preparar la suya; pero al reanudarse la sesión y antes de que desfilase la prueba del Alcalde, uno de los asambleístas presentó una moción para que se resolviese por la Asamblea que la prueba presentada por el Gobernador no revelaba justa causa para la destitución, y en su consecuencia exonerase al Alcalde en cuanto al quinto cargo, sin que fuere necesario que el querellado presentase su prueba de defensa.(¹) Así lo resolvió la Asamblea por mayoría y contra dicho fallo el querellante interpuso el presente recurso.

Dada la dilación de que ha sido objeto este asunto por parte de la Asamblea Municipal y considerada la importancia de los cargos presentados, señalamos la vista del recurso para el 27 del pasado mes.(²) El 26 de junio presentó el querellado una moción solicitando la desestimación del recurso y en dicha fecha radicó su alegato.

La moción de desestimación está predicada en que cuando se radicó el escrito de apelación el Hon. Jesús T. Piñero, Gobernador de Puerto Rico, se hallaba ausente de la Isla, por lo que carecía de autoridad para entablar el recurso, correspondiendo dicha facultad al Hon. Manuel A. Pérez, quien para esa fecha desempeñaba todas las funciones de Gobernador de Puerto Rico por designación expresa del Presidente de los Estados Unidos.(³)

Los fundamentos de esta moción carecen de méritos. Bastará decir que el Hon. Jesús T. Piñero no cesó como Gober-

---

(¹)Ponen gran énfasis los abogados del Alcalde en que ellos insistieron en presentar su prueba para controvertir la del Gobernador. Sea ello como fuere, esa decisión de la Asamblea Municipal le favoreció, porque de todos modos, impide a este Tribunal dictar la resolución que debió haber dictado la Asamblea Municipal, por los méritos de la prueba, en lo que respecta a dicho cargo.

(²)No compareció a la audiencia la representación legal del Alcalde, pero dos minutos antes de abrirse la sesión, radicó una moción sometiendo el caso por los méritos de los alegatos presentados.

(³)Esta moción vino acompañada de una certificación de la Secretaria Ejecutiva acreditativa de que el Hon. Manuel A. Pérez actuó como Gobernador Interino de Puerto Rico desde el 19 de mayo hasta el 9 de junio de 1947, a las tres de la tarde.

nador de Puerto Rico por el hecho de que se ausentara para los Estados Unidos, no habiendo razón legal alguna para que el procedimiento no se continuase a su nombre, en su carácter oficial.

En su alegato levanta el querellado dos motivos adicionales de desestimación, a saber:

(a) Que el escrito de apelación no fué válidamente notificado a la Asamblea Municipal ni al Alcalde querellado; y

(b) Que no hay ante este Tribunal récord válido y auténtico de la prueba recibida por la Asamblea Municipal.

Bastará examinar el juramento al calce del escrito de apelación suscrito por el abogado Guillermo A. Gil, para concluir que dicho escrito fué válidamente notificado a la Asamblea Municipal y al querellado.(⁴)

---

(⁴)El juramento en el escrito de apelación dice así:

"Yo, GUILLERMO A. GIL, bajo el más solemne juramento declaro y digo:

"Que me llamo como se deja expresado, soy mayor de edad, casado, Procurador General Auxiliar y vecino de San Juan, Puerto Rico.

"Que soy uno de los abogados del Hon. Gobernador de Puerto Rico, querellante apelante en este procedimiento; que en el día de hoy he depositado personalmente en las oficinas de correo de San Juan, quince sobres debidamente certificados y franqueados, habiendo pagado el importe del franqueo en su totalidad, dirigidos dichos sobres a las siguientes personas a la ciudad de Mayagüez en donde todas ellas residen en la actualidad: Sr. Eduardo A. Ruiz, en su carácter de Presidente de la Asamblea Municipal de Mayagüez; Sr. Emilio Forestier Gregory, en su carácter de Secretario Municipal de Mayagüez y a la vez Secretario de la referida Asamblea Municipal; Ledo. José Rafael Gelpí, en su carácter de uno de los abogados del Alcalde querellado apelado; y a los señores asambleístas municipales de Mayagüez nombrados: Marcel Courtier, Carlos Mercader, Pedro Vincenty, Teresa L. Bacó de Velazco, Juan Luciano Lallave, Faustino J. Perdomo, José Cuesta Urrutia, Félix Castillo, Pedro Vélez, Fernando del Toro, Pedro Barbosa y José A. Cesany; que cada uno de dichos sobres contenía una copia fiel y exacta del escrito de apelación que precede y además, una copia fiel y exacta del pliego de Fundamentos de Hecho y de Derecho en apoyo del recurso de apelación, el cual pliego acompaña al escrito de apelación que precede; y que entre la ciudad de San Juan y la ciudad de Mayagüez existe un servicio regular y diario de comunicaciones por correo a cargo de los Estados Unidos de América, habiéndose hecho esta notificación por la vía postal a razón de que todas las personas notificadas residen en la ciudad de Mayagüez y los abogados del querellante apelante residen en San Juan, que es una ciudad distinta y distante de la ciudad de Mayagüez."

■ Se arguye, además, que el escrito de apelación no fué notificado dentro del término para apelar y que el sobre conteniendo la notificación para el abogado del querellado, Sr. Gelpí, fué dirigido al Lic. José Enrique Gelpí, siendo su verdadero nombre "José Rafael Gelpí"; que no fué dirigido a su oficina ni a su residencia, sino al apartado de correos de su padre, Lic. José Rosario Gelpí.

Controvirtiendo las alegaciones de dicha moción, los abogados del Gobernador han acompañado sendas declaraciones juradas del taquígrafo que puso la dirección en el sobre, del Administrador de Correos de San Juan y del Administrador de Correos de Mayagüez, tendientes a probar que dicho sobre fué dirigido a José R. Gelpí y puesto en el apartado de correos de José Rafael Gelpí, en Mayagüez. Pero sea ello como fuere, es lo cierto que tanto el abogado del querellado como la Asamblea Municipal, recibieron la copia del escrito de apelación y esa circunstancia cura cualquier defecto que pudiera haber existido en cuanto a la forma en que se dirigió la notificación.

■ En lo que respecta a si la notificación fué recibida dentro del término concedido para apelar, la regla en esta jurisdicción es al efecto de que una notificación por correo queda cumplida al tiempo de depositar el pliego en la oficina postal. Regla 5(b) de Enjuiciamiento Civil. *Serra* v. *Corte Municipal*, 49 D.P.R. 542 y *Ex Parte Bithorn vda. Benítez*, 53 D.P.R. 584.(⁵)

■ Consideraremos ahora el motivo de desestimación fundado en la falta de una transcripción de evidencia aprobada por la Asamblea Municipal.

En los casos de residencia, tanto el Presidente como los demás miembros de la Asamblea Municipal constituyen el tribunal. En consecuencia, la transcripción de evidencia

---

(⁵)El mismo principio prevalecía bajo el artículo 322 del Código de Enjuiciamiento Civil.

debe ser aprobada por el tribunal en pleno o un quórum del mismo y no por el Presidente con exclusión de los demás miembros. Al citarse a las partes para la vista sobre aprobación de la evidencia ante el Presidente de la Asamblea, el querellado objetó por no tener dicho funcionario jurisdicción para aprobar la transcripción y anunció que tenía enmiendas que proponer, pero que las propondría ante la Asamblea en pleno. La objeción del querellado fué rechazada y ahora solicita que el recurso sea desestimado en cuanto al quinto cargo, por no tener ante nos una transcripción de la evidencia aprobada por la Asamblea Municipal.

Convenimos con el querellado en que la aprobación de la transcripción de evidencia por el Presidente no es válida. Consecuentemente, no podemos considerar dicha transcripción a los efectos de pasar sobre la suficiencia de la prueba en apoyo del quinto cargo. Siendo ello así, procede desestimar el recurso en lo que respecta a dicho cargo.

En cuanto a la excepción previa contra los primeros cuatro cargos, no es necesaria la transcripción de evidencia, puesto que de los autos aparecen los cargos, la excepción previa, sus fundamentos y la resolución dictada por la Asamblea declarándola con lugar. Por consiguiente, discutiremos ahora la excepción previa en cuanto a los cuatro primeros cargos, los cuales dicen así:

"PRIMER CARGO

"Usted, Manuel A. Barreto, actuando como Alcalde de Mayagüez, el día 12 de diciembre de 1944, sin la celebración de una subasta, como determina el Artículo 8, Inciso 5 de la Ley Municipal, arrendó a Francisco P. Cintrón la plaza pública del Municipio de Mayagüez y calles adyacentes a la misma y las calles públicas de los Barrios Balboa y Playa, del mismo municipio, para ser usadas en las fiestas patronales de dicho pueblo que se celebraron desde el 22 de enero de 1945 al 2 de febrero de 1945.

"SEGUNDO CARGO

"Usted, Manuel A. Barreto, actuando como Alcalde Municipal de Mayagüez, recibió y permitió que se recibiera, el 12 de diciembre

de 1944, por Matilde Nadal de Ramírez y Miguel A. Yáñez, la suma de CINCO MIL DÓLARES CUATRO CENTAVOS ($5,000.04) del señor Francisco P. Cintrón, por concepto de arrendamiento de la plaza pública de Mayagüez y calles adyacentes, y calles de los Barrios Balboa y Playa, y no ingresó, ni hizo que se ingresara, la referida suma, propiedad del Municipio de Mayagüez, en las arcas municipales, en violación a la Sección 3(a) del Reglamento para el Régimen de la Contabilidad Municipal, aprobado por el Gobernador de Puerto Rico en noviembre 9 de 1936, a virtud del Artículo 20 de la Ley Orgánica y al Artículo 68 de la Ley Municipal.

## "Tercer Cargo

"Usted, Manuel A. Barreto, actuando como Alcalde de Mayagüez, permitió y autorizó que se gastara la suma de CINCO MIL DÓLARES CUATRO CENTAVOS ($5,000.04) que le pagó al Municipio de Mayagüez, el 12 de diciembre de 1944, Francisco P. Cintrón como canon de arrendamiento de la plaza pública de Mayagüez y calles adyacentes, y calles de los Barrios Balboa y Playa, de dicho municipio, por el período en que se celebraron las fiestas patronales, o sea, desde el día 22 de enero de 1945 al día 2 de febrero de 1945 en atenciones ajenas y extrañas a las erogaciones y gastos legítimos del Municipio de Mayagüez y sin la autorización de la Asamblea Municipal y en violación a los Reglamentos de Auditoría Insular.

## "Cuarto Cargo

"Usted, Manuel A. Barreto, actuando como Alcalde del Municipio de Mayagüez, aceptó de los fondos municipales, producto del arrendamiento de la plaza pública y calles adyacentes del Municipio de Mayagüez y calles de los Barrios Balboa y Playa, de dicho municipio, las siguientes sumas de dinero producto del arrendamiento mencionado en el cargo primero:

"(a) CIEN DÓLARES ($100.00) el día 25 de enero de 1945 en cheque Número 14, contra el Banco Crédito y Ahorro Ponceño, Sucursal de Mayagüez, el cual hizo efectivo y endosó recibiendo su importe para supuestos gastos varios, viajes, etc.

"(b) DOSCIENTOS CINCUENTA DÓLARES ($250.00) el día 29 de enero de 1945 en cheque Número 18, contra el Banco Crédito y Ahorro Ponceño, Sucursal de Mayagüez, el cual hizo efectivo y endosó recibiendo su importe para supuestos donativos a ancianos pobres.

"(c) Cuarenta dólares ($40.00) que recibió el día 3 de febrero de 1945, en cheque Número 30, contra el Banco Crédito y Ahorro Ponceño, Sucursal de Mayagüez, el cual hizo efectivo y endosó recibiendo su importe para supuestos premios.

"(d) Seis dólares ($6.00) que recibió el día 3 de febrero de 1945, en cheque número 33, contra el Banco Crédito y Ahorro Ponceño, Sucursal de Mayagüez, el cual hizo efectivo y endosó recibiendo su importe para supuesto premio adicional para el Colegio de Agricultura.

"(e) Cuatrocientos dólares ($400.00) que recibió el día 29 de enero de 1945, en cheque Número 27, contra el Banco Crédito y Ahorro Ponceño, Sucursal de Mayagüez, el cual hizo efectivo y endosó recibiendo su importe para supuesto donativo al Cuerpo de Bomberos.

"(f) Doscientos cincuenta dólares ($250.00) que recibió el día 6 de febrero de 1945, en cheque Número 48, contra el Banco Crédito y Ahorro Ponceño, Sucursal de Mayagüez, el cual hizo efectivo y endosó recibiendo su importe para supuestos gastos varios.

"(g) Cuarenticinco dólares ($45.00) que recibió el día 6 de febrero de 1945, en cheque Número 45, contra el Banco Crédito y Ahorro Ponceño, Sucursal de Mayagüez, el cual hizo efectivo y endosó recibiendo su importe para supuestas fotografías."

La cuestión a determinar es si todos o alguno de dichos cuatro cargos que fueron objeto de la excepción previa, aducen hechos suficientes que justifiquen la separación del querellado como Alcalde de Mayagüez.

### Primer Cargo

A los efectos de la excepción previa, el querellado acepta que celebró el contrato de arrendamiento a que se refiere el primer cargo. Arguye, sin embargo, que dicho cargo no aduce hechos porque la facultad de arrendar bienes pertenecientes al municipio está investida en la Junta de Subasta y que por consiguiente el Gobernador no puede querellarse contra el alcalde de un municipio por la ejecución de un acto que éste legalmente no puede llevar a cabo.

La mera enunciación del argumeno es su mejor refutación. Lo que se le imputa es haber celebrado dicho contrato sin cumplir con el requisito legal de la previa subasta.

Arguye, además, el querellado, en apoyo de su excepción previa, que las calles y plazas públicas no son de la exclusiva pertenencia del municipio, sino del pueblo, y las mismas no son susceptibles de arrendamiento. En apoyo de sus tesis el querellado cita el artículo 256 del Código Civil.(⁶)

A los efectos de esta opinión, es innecesario resolver si los bienes de uso público pueden ser objeto del contrato de arrendamiento. En la hipótesis de que lo fueran, para arrendarlos tendría que cumplirse con el requisito previo de la subasta; y suponiendo que no pudieran ser objeto de arrendamiento, se alega que fueron arrendados. Bajo una u otra hipótesis, el Alcalde actuó en violación de la ley.

Es claro, a nuestro juicio, que el primer cargo aduce hechos que de ser probados, no sólo justificarían, sí que demandarían que el querellado fuese destituído.

### SEGUNDO Y TERCER CARGOS

Los fundamentos en que está predicada la excepción previa en cuanto al segundo cargo son pueriles. Siendo el Alcalde quien arrendó la propiedad del Municipio, no podían recibir Matilde Nadal y Miguel A. Yáñez el canon de arrendamiento, a menos que él autorizara al arrendatario a entregar a esas personas el dinero perteneciente al Municipio. Como se dijo por este Tribunal en *In re Fonseca* v. *Gely*, 42 D.P.R. 195, invocado por el querellante:

---

(⁶)Artículo 256 del Código Civil:

"Son bienes de uso público en Puerto Rico y en sus pueblos, los caminos insulares y los vecinales, las plazas, calles, fuentes y aguas públicas, los paseos y las obras públicas de servicio general, costeadas por los mismos pueblos o con fondos del tesoro de Puerto Rico.

"Todos los demás bienes que El Pueblo de Puerto Rico o los municipios posean, son patrimoniales y se regirán por las disposiciones de este código."

"El que el dinero recibido como arrendamiento fuera entregado al director de una orquesta local y el alcalde no se lo apropiara para sí, no puede excusar el mal uso de dineros pertenecientes al municipio."

Si bien el Alcalde, como tal, no era quien debía hacer el ingreso en los fondos municipales, sin embargo, como arguyen los abogados del Gobernador, el Alcalde es el jefe ejecutivo del municipio y tiene el deber de velar porque dichos fondos sean ingresados en el tesoro municipal. Lo dicho con respecto al segundo cargo es de perfecta aplicación al tercero. Uno y otro aducen hechos suficientes para justificar la destitución del querellado.

### Cuarto Cargo

Basta leer el cuarto cargo para advertir su importancia. Fúndase la excepción previa al mismo en que los cheques que recibió el Alcalde, provenientes de fondos pertenecientes al Municipio y que él endosó y dispuso de su importe para supuestos fines no autorizados por la Asamblea, fueron expedidos por otras personas y que son éstas, y no el Alcalde, las verdaderas responsables. En verdad, difícil nos es entender el fundamento de la excepción previa en cuanto a este cargo. De todos modos se le imputa que dispuso de dineros pertenecientes al Municipio. Siendo ello así, es de aplicación la doctrina del caso de *In re Fonseca* v. *Gely,* supra.

Como fundamento general de la excepción a los cuatro cargos, se invoca el caso de *Tugwell, Gobernador* v. *Campos,* 65 D.P.R. 660, para sostener que allí se resolvió que cargos similares a los del caso que nos ocupa eran insuficientes para sostener la destitución del alcalde. Bastará decir que en el caso de *Campos,* supra, la decisión de este Tribunal está predicada en error manifiesto en la apreciación de la prueba, y no en la suficiencia de los cargos imputados.

Habiendo llegado este Tribunal a la conclusión de que erró la Asamblea Municipal al declarar con lugar la excepción previa, *procede desestimar el recurso solamente en cuanto al*

*quinto cargo y revocar la resolución recurrida en cuanto a los primeros cuatro, devolviéndose el caso a la Asamblea Municipal de Mayagüez para que, sin excusa o pretexto alguno, proceda inmediatamente a recibir la evidencia de una y otra parte con respecto a los primeros cuatro cargos y a decidir el caso por los méritos de la prueba.*